[No. 4803.    Decided December 16, 1903.]

HEALY LUMBER COMPANY, *Appellant*, v. SHAMGAR MORRIS *et al., Respondents.*[1]

EMINENT DOMAIN—PUBLIC USE—RIGHT OF WAY FOR LOGGING ROADS—TAKING PROPERTY FOR PRIVATE USE. Laws of 1899, p. 255, granting to the owner of timbered lands the right to condemn a right of way for logging roads and lumbering purposes contravenes Const., art. 1, § 16, prohibiting the taking of private property for private use.

SAME—PUBLIC USE A JUDICIAL QUESTION—DISCRETION. Const., art. 1, § 16, providing that the question in condemnation proceedings whether a use is a public use shall be a judicial question, negatives the idea that any weight should be given by the courts to the fact that the legislature has pronounced a certain thing a

[1]Reported in 74 Pac. 681.

public use, and submits the question of public use to the discretion of the courts.

SAME—STATUTES—PRESUMPTION. Nor does the ordinary presumption in favor of the constitutionality of an act apply to a legislative assertion upon a subject that has been specially submitted to the courts.

SAME—DISTINCTION BETWEEN LOGGING AND BOOM COMPANIES. A private logging company in the exclusive prosecution of its own private business stands upon a footing in relation to the power of eminent domain different from that occupied by a boom company doing a carrying business for the public.

SAME—PUBLIC BENEFIT NOT PUBLIC USE. The public use authorizing the exercise of the right of eminent domain contemplated by the constitution is not synonymous with public benefit, and a use for private enterprises does not authorize the exercise of the right however much public policy demands it, or whatever the public benefit therefrom may be, but it must be a use by the public or by some agency that is quasi public.

SAME—CONDEMNATION OF PRIVATE WAYS OF NECESSITY—GRANT. A condemnation proceeding by the owner of timbered lands for the purpose of acquiring a right of way for a logging road and lumbering purposes, under Laws of 1899, p. 255, cannot be sustained under the provision of the constitution, art. 1, § 16, permitting the taking of private property for private ways of necessity, as such ways have reference to the common law definition of the term, requiring the element of grant, and having no reference to the land of strangers.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 9, 1903, upon sustaining a demurrer to the complaint, dismissing an action brought to condemn a right of way for a logging road and waterway. Affirmed.

*Preston, Carr & Gilman* and *Hoyt & Haight,* for appellants. The violation of the constitution must be clear; where the public use is declared by the legislature it will be so held unless it manifestly appears otherwise. *Hazen v. Essex County,* 12 Cush. 475; *Talbot v. Hudson,* 16 Gray 417. Eminent domain is the power to apply private

property to a public purpose on payment of just compensation. *Charles River Bridge Co. v. Warren Bridge,* 11 Pet. 420; *Mississippi etc. Boom Co. v. Patterson,* 98 U. S. 403, 25 L. Ed. 206; *United States v. Jones,* 109 U. S. 513, 3 Sup. Ct. 346. In all governments it is the highest idea of property. Grotius, De Jure Belli et Pacis, Lib. 3 c. 20, vii, 1; *Beekman v. Saratoga etc. R. Co.,* 3 Paige 45, 22 Am. Dec. 679. It embraces all cases of taking, by the state or private parties, for public purposes, or where the public welfare is promoted indirectly by increased prosperity. Lewis, Eminent Domain, § 1 (2d ed.). Public use means public benefit, interest, or convenience. Pierce, Railroads, 143; *Olmstead v. Camp,* 33 Conn. 532, 89 Am. Dec. 221; *Aldridge v. Tuscumbia etc. R. Co.,* 2 Stew. & Por. 199. Necessity is said not to be a test of usefulness. Lewis, Eminent Domain, § 162; *Dayton etc. Min. Co. v. Seawell,* 11 Nev. 394. Yet necessity is at the basis of the exercise of eminent domain, and the ultimate consideration in determining whether the use is public. *Fallbrook Irrigation District v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56; Cooley, Const. Lim. 651-659 (6th ed.); *People v. Township Board,* 20 Mich. 452; *Fiske v. Framingham Mfg. Co.,* 12 Pick. 67. The courts sustain the power for the private benefit of one or more persons. *Lewis v. Washington,* 5 Gratt. (Va.) 265; *Roberts v. Williams,* 15 Ark. 43; *Paine v. Leicester,* 22 Vt. 44; *Drake v. Clay,* Sneed (Ky.) 139; *Johnson v. Clayton County,* 61 Iowa 89, 15 N. W. 856; *Pagels v. Oaks,* 64 Iowa 198, 19 N. W. 905. Condemnation has been sustained for the purposes of a cemetery. *Evergreen Cemetery Ass'n v. Beecher,* 53 Conn. 551, 5 Atl. 353. For dikes and levees. *Egyptian Levee Co. v. Hardin,* 27 Miss. 495; *New Orleans Drainage Co.,* 11 La. An. 338; *Cypress Pond Draining Co. v. Hooper,* 2 Met. (Ky.) 350; *Tide Water*

*Co. v. Coster,* 18 N. J. Eq. 518, 90 Am. Dec. 634; *Matter of drainage etc.,* 41 N. J. L. 175; *Northfleet v. Cromwell,* 70 N. C. 634, 16 Am. Rep. 787; *Hansen v. Hammer,* 15 Wash. 315, 46 Pac. 332. To reclaim marsh lands. *Lewis County v. Gordon,* 20 Wash. 80, 54 Pac. 779. For irrigation purposes. *Prescott Irrigation Co. v. Flathers,* 20 Wash. 454, 55 Pac. 635. For private passage ways. *Jones' Heirs v. Barclay,* 2 J. J. Marsh. 73; *MacCauley v. Dunlap,* 4 B. Mon. 57, 16 Am. Dec. 130; *Rout v. Mountjoy,* 3 B. Mon. 300; *Troutman v. Barnes,* 4 Met. (Ky.) 337; *Robinson v. Swope,* 12 Bush. 21. In aid of the utilization of water power, in every state where such power is a great natural resource. *Boston etc. Co. v. Newman,* 12 Pick. 467, 23 Am. Dec. 622; *Scudder v. Trenton etc. Co.,* 1 N. J. Eq. 694, 23 Am. Dec. 756; *Olmstead v. Camp,* 33 Conn. 532; *Todd v. Austin,* 34 Conn. 78; *Occum Co. v. Sprague Mfg. Co.,* 35 Conn. 496; *Hankins v. Lawrence,* 8 Blackf. 266; *Great Falls Mfg. Co. v. Fernald,* 47 N. H. 444; *Amoskeag Mfg. Co. v. Head,* 56 N. H. 386; *Ash v. Cummings,* 50 N. H. 591; *Amoskeag Mfg. Co. v. Goodale,* 62 N. H. 66; *Burnham v. Thompson,* 35 Iowa 421; *Venard v. Cross,* 8 Kan. 248; *Miller v. Troost,* 14 Minn. 365; *Traver v. Merrick Co.,* 14 Neb. 327, 15 N. W. 690, 45 Am. Rep. 111; *Newcomb v. Smith,* 2 Pin. (Wis.) 131. It is sustained for a flume to convey water to lumber mills. *Maffet v. Quine,* 93 Fed. 347; *Dalles Lumbering Co. v. Urquhart,* 16 Ore. 67, 19 Pac. 78. For a dam to flood lands for the private cultivation of fish. *Turner v. Nye,* 154 Mass. 519, 28 N. E. 1048. For dams in aid of the cultivation of cranberries. *Bearse v. Perry,* 117 Mass. 211; *Turner v. Nye,* 154 Mass. 579, 28 N. E. 1048. In aid of the development of mines. *Dayton Min. Co. v. Seawell,* 11 Nev. 394; *Hand Gold Min. Co. v. Parker,* 59 Ga. 419; *Downing v.*

*More,* 12 Colo. 316, 20 Pac. 766; *Lamborn v. Bell,* 18 Colo. 346, 32 Pac. 989. For drainage purposes. *Seely v. Sebastian,* 4 Ore. 25. For a highway, although only one person or family is accommodated. *Lewis v. Richmond,* 5 Gratt. (Va.) 265; *Paine v. Leicester,* 22 Vt. 44; *Pagels v. Oaks,* 64 Iowa 199, 19 N. W. 905. The public is interested in having products marketed. *Los Angeles County v. Reyes* (Cal.), 32 Pac. 233. Cases refusing condemnation for manufacturing sites are distinguished on the ground that sites can be secured without the necessity of condemnation. *Oury v. Goodwin* (Ariz.), 26 Pac. 376. Government must adapt itself to the existing condition and wants of society. *Swan v. Williams,* 2 Mich. 438. The promotion of particular industries is held controlling and sufficient. *Paxton & Hershey Irr. etc. Co. v. Farmers etc. Co.,* 45 Neb. 884, 64 N. W. 343, 50 Am. St. 585; *Dayton etc. Min. Co. v. Seawell,* 11 Nev. 394; *Hand Gold Min. Co. v. Parker, supra; Butte etc. R. Co. v. Montana Union R. Co.,* 16 Mont. 550, 41 Pac. 248; *Chicago etc. R. Co. v. Morehouse,* 112 Wis. 1, 87 N. W. 849, 88 Am. St. 918; 7 Lawson's Rights, Rem. & Prac., § 3885; *North River Boom Co. v. Smith,* 15 Wash. 138, 45 Pac. 750. Recent cases supporting appellant's cause are: *Leigh v. Garysburg Mfg. Co.,* 132 N. C. 167, 43 S. E. 632 (logging road); *State, Albright v. Sussex County etc.* (N. J.), 53 Atl. 612; *Missouri etc. R. Co. v. Cambern,* 10 Kan. App. 581, 63 Pac. 605 (levees); *Morrison v. Thistle Coal Co.* (Iowa), 94 N. W. 507 (for spur track to a quarry); *Madera County v. Raymond Granite Co.,* 138 Cal. 244, 71 Pac. 112 (for a private road).

*Walter S. Fulton* and *Vince H. Faben,* for respondent. By the weight of authority public use is defined as meaning use by the public. Lewis, Eminent Domain, § 165;

*Bloodgood v. Mohawk etc. R. Co.,* 18 Wend. 9, 31 Am.
Dec. 313; *Welton v. Dixon,* 38 Neb. 767, 57 N. W. 559,
22 L. R. A. 496, 41 Am. St. 771; *Bankhead v. Brown,*
25 Iowa, 540; *Jenal v. Green Island Draining Co.,* 12
Neb. 163, 10 N. W. 547; *Apex Transportation Co. v. Gar-
bade,* 32 Ore. 582, 52 Pac. 573, 54 Pac. 367, 882 (a case
directly in point); *Anderson v. Kerns Draining Co.,* 14
Ind. 199, 77 Am. Dec. 63; *People v. Pittsburg R. Co.,*
53 Cal. 694; *State v. Railway Co.,* 40 Ohio St. 504; *Con-
solidated Channel Co. v. Central Pac. R. Co.,* 51 Cal. 269;
*Edgwood R. Co.'s Appeal,* 79 Pa. St. 257; *Salt Company
v. Brown,* 7 W. Va. 191; *Sholl v. German Coal Co.,* 118
Ill. 427, 10 N. E. 199; *Tyler v. Beacher,* 44 Vt. 648;
*Loughbridge v. Harris,* 42 Ga. 501; *Ryerson v. Brown,* 35
Mich. 333, 24 Am. Rep. 564; *Hay v. Cohoes Co.,* 3 Barb.
42; *Varner v. Martin,* 21 W. Va. 534; *McQuillen v. Hat-
ton,* 42 Ohio St. 202; *Garbutt Lumber Co. v. Georgia etc.
R. Co.,* 111 Ga. 714, 36 S. E. 942; *Taylor v. Porter,* 4 Hill
140; *Patterson v. Baumer,* 43 Iowa 477; *Reeves v. Treas-
urer,* 8 Ohio St. 333; *In re Niagara etc. R. Co.,* 108 N. Y.
375, 15 N. E. 429; *Brewster v. Rogers Co.,* 169 N. Y. 73,
62 N. E. 164; *In re Theresa Drainage Dist.,* 90 Wis. 301,
63 N. W. 288; *Logan v. Stogdale,* 123 Ind. 372, 24 N. E.
135; *Pittsburg etc. R. Co., v. Benwood Iron Works,* 31 W.
Va. 710, 8 S. E. 453; *McCandless' Appeal,* 70 Pa. St.
210.   The constitutional provision with reference to pri-
vate ways of necessity is not self executing.   *Long v. Bill-
ings,* 7 Wash. 267, 34 Pac. 936.   The logging roads au-
thorized by the law of 1899 are not private ways of neces-
sity as defined by Laws 1895, p. 181; nor as defined by
the common law.   *Barr v. Flynn,* 20 Mo. App. 383; *Stew-
art v. Hartman,* 46 Ind. 331; *Burwell v. Sneed,* 104 N. C.
118, 10 S. E. 152; *Seeley v. Bishop,* 19 Conn. 128; *Gay-
etty v. Bethune,* 14 Mass. 49.

DUNBAR, J.—This is an action brought by appellant to condemn land and waters for a logging road and waterway in King county. A demurrer to the complaint was sustained, and, the plaintiff electing to stand on its complaint, judgment was rendered for the defendants. The complaint made the necessary allegations to bring the case within the statute which provides for the condemnation of logging roads and waterways. The act is found on page 255 of the Laws of 1899, and the first section thereof is as follows:

"§ 1. Any owner or owners of any timbered lands, or timber, desiring to cut or remove the same to a point wherein the same may be manufactured, transported, by either rail or water, driven, rafted, assorted, boomed or shipped for lumbering purposes, and having no practical route for a road or right-of-way whereon to remove or haul said timber, shall have the right to condemn as hereinafter provided, a right-of-way for a logging road, or chute, stream, or water-course from said lands to any waters, railroad, logging road or chute or public highway, by the most direct and feasible route, and shall have the right to condemn the use of any stream, water-course, slough, pond or lake together with sufficient land along the bank or banks thereof, to enable the driving, rafting, booming, or handling of such timber for the removal of said timber provided that proceedings to obtain such right-of-way shall conform to the law allowing private corporations to condemn a right-of-way in this state, except as is hereinafter provided."

Sections 2, 3, 4 and 5 provide the mode of procedure. Sections 7 and 9 are as follows:

"§ 7. Judgment shall be entered upon said verdict or finding appropriating an easement upon said land and other property for said right-of-way for the purpose only of logging or removing timber from the land set forth in said complaint: *Provided, however,* That any one or more persons owning or controlling timber land or timber and

entitled to condemn such right-of-way under the provisions of this act may join as plaintiffs in such action. Any person condemning such right-of-way shall have the exclusive use thereof and the right to remove therefrom any improvements or structures placed thereon, subject to the right of any other person or persons to condemn said logging road, chute, stream, water-course or slough, as herein provided: *Provided further,* That any other party owning or controlling timber tributary to any such stream or water-course condemned as aforesaid, and who has not joined in such condemnation, may have the right to use the same upon paying to the parties owning the right-of-way the proper proportion of the cost of such improvement and the expenses of maintaining the same, to be determined by the superior court of the proper county, if the parties cannot agree.

"§ 9. When any logging road or chute, stream or water-course, slough, or lake shall cease to have been used for one year, any party interested may file a motion in such action and upon notice to the owner or person in charge of such timber, obtain an order vacating such right-of-way, unless good cause is shown why such logging road or chute, stream, water-course, slough, pond, or lake upon such condemned right-of-way should not be vacated. Nothing but an easement can be acquired by this proceeding and no interest in the land shall pass by the decree of appropriation."

The demurrer was sustained on the ground that the act was in contravention of § 16, art. 1 of the constitution of this state, which provides as follows:

"Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes or ditches on or across the lands of others for agricultural, domestic or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having been first made or paid into court for the owner, and no right-of-way shall be appropriated to the use of any corporation other than municipal, until full compensation therefor be first made in money, or ascer-

tained and paid into the court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived as in other civil cases in courts of record, in the manner prescribed by law. Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such without regard to any legislative assertion that the use is public;"

in that the act of condemnation did not provide for a public use of the land condemned.

This case presents important questions, deserving the most serious consideration, involving as it does the representative interests of private rights, and of property of the state sought to be protected and fostered through the exercise of the high prerogative of sovereignty; the former being guaranteed by the fundamental law, and the latter being a subject of universal interest and concern. Eminent domain is the right or power of a sovereign state to appropriate private property. This right is generally exercised through condemnation proceedings, and the rights of the individual must yield to the superior rights of the state as a promoter and conservator of the public welfare. It will be seen that the vital question to be determined is whether the statutory proceedings in question secure the public or private use of the property condemned.

An immense number of authorities have been cited in this case, all of which we have carefully examined, but a particular analysis of which cannot be made within the limits of a reasonable opinion. But, from the research we have made, we conclude that both the weight of authority and the better reasoning sustain the judgment in this case; that, therefore, the statute in question is in contravention

of the constitution, and that the words "public use" were not used by the framers of the constitution in the liberal and, it seems to us, somewhat indiscriminate sense which is contended for by the appellant.

The learned attorneys for appellant have favored the court with an exhaustive and earnest argument in their brief, and a painstaking showing is made of the magnitude of the lumbering business and interest of this state, and the effect that it presumably has upon the general prosperity of the commonwealth, and we are urged to announce a broad and statesmanlike principle in determining this question, and one which would further the business prosperity of the state rather than one which would hamper and retard it. But the court cannot invade the province of the law-making powers of government, and intrude into its decrees its opinion on questions of public policy. Its duty is to strictly recognize its legal limitations and confine itself to the narrower duties of interpretation and construction. The main arguments in the brief, powerful as they are, would have been more appropriately presented to the framers of the constitution.

Many of the cases cited by the appellant have no application to this case, for the reason that they are from states having constitutions with different provisions from ours on the subject of eminent domain. An examination of all the different constitutions in the Union shows that only two other states, viz., Colorado and Missouri, have the provision of our constitution that "whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question and determined as such, without regard to any legislative assertion that the use is public." That fact eliminates from the discussion in this case all that line of cases which hold that the fact that the legis-

lature has either pronounced a certain thing a public use, or has so indicated by its enactment, by conferring the right of eminent domain, ought to have great weight with the court in construing the constitutionality of the act; because our constitution has expressly negatived any such idea, evidently deeming it necessary to place a restriction upon legislative sentiment in this respect. So that, under the provision of our constitution, the court is untrammeled by any consideration due to legislative assertion or enactment.

Most of the constitutions have limitations upon the power of the state to condemn private property except for public use. A good many, however, have left in the state just such powers as it had, untrammeled by limitations, and cases from states where there is no limitation on legislative enactment, of course, are without value in the consideration of this case. The first few cases cited by appellant, commencing with the citation from Grotius, simply announce the undisputed doctrine that the power of eminent domain is inherent in sovereignty, and that the property of the subject is under the power of the eminent domain of the state to such an extent that the state may use and even destroy such property for ends of public utility. *Hazen v. Essex Company,* 12 Cush. 475, is not in point, for the announcement of the court in that case was that in determining the question we must look to the declared purpose of the act, and, if a public use was declared, it would be so held, unless it manifestly appeared by the provisions of the act that they could have no tendency to advance and promote such public use. So that with a premise of this kind it can readily be seen that any conclusion reached by the court would not be valuable in determining rights under a constitution like ours. *Talbot v. Hudson,* 16 Gray 417, was a case from the same state, and, while in some respects its reasoning coincides with the appellant's contention in rela-

tion to the property of the people benefited, it makes the following announcement:

"When an act has been passed with all the requisites necessary to give it the force of a binding statute, it must be regarded as valid, unless it can be clearly shown to be in conflict with the constitution. It is therefore incumbent on those who deny the validity of a statute, to show that it is a plain and palpable violation of constitutional right."

And this statement, which we concede is ordinarily a proper statement of the law, is, we think, not applicable under the provisions of our statute, where the sole question at issue, viz., whether or not the contemplated use be really public, is taken by special enactment from the legislature and placed within the discretion of the court. Under such circumstances the case comes to the court without any presumption one way or the other on the subject of public use, but is to be tried by the court like any other question that is submitted to its discretion. In support of his view the appellant presents the following quotation from Lewis on Eminent Domain, § 1:

"It embraces all cases where, by authority of the state and for the public good, the property of the individual is taken, without his consent, for the purpose of being devoted to some particular use, either by the state itself or by a corporation, public or private, or by a private citizen. Apart from constitutional considerations, it is not essential, in order to constitute an act of eminent domain, that the use for which the property is taken should be of a public nature. It is sufficient that the use of the property for the purpose proposed is necessary to enable individual proprietors to cultivate and improve their land to the best advantage, or to develope certain natural and exceptional resources incident thereto, such as a water privilege or a mine. In such cases the public welfare is promoted, though indirectly, by the increased prosperity which necessarily results from developing the natural resources of the country."

It is the unlimited use of the power of eminent domain of which Mr. Lewis was speaking, but what he says in no way aids the determination of this question, for the author, continuing in the same section, says:

"Doubtless the definitions which restrict eminent domain to a taking for public use have been inspired by the constitutional provisions which prevail in the United States and impose this limitation on the exercise of the power;"

the limitation being that the taking should be for a public use. And there is nothing in the language of the author by which we can conclude that the cases which he cites would be considered a taking for public use.

It is insisted that the courts have sustained the taking of property, ostensibly for the use and enjoyment of the property by the public, but really for the private benefit of one or more persons, and *Lewis v. Washington*, 5 Gratt. 265, is cited. This case does not involve the constitutional limitation, or any question of the power of eminent domain, but is a construction of the power of the county court under the law to establish a road, and it was held that its establishment rested within the discretion of the court. In the discussion of that case the court laid down the broad doctrine that there was no principle upon which the wants and necessities of one individual must be imperatively rejected, which would not be applicable to two or three or a dozen, or any given number short of the whole or the greater part of the community, a doctrine which, of course, could not be sustained if it were applied to the subject of eminent domain under our constitutional provisions. The other cases cited under this head do not seem to us to be important as sustaining either view of this controversy. It is true that condemnation of lands for a cemetery has been sustained, and for dikes and levees for draining swamps,

and for many purposes of like character, but in all such cases there was more of an element of public use than in the case at bar, and the decisions were based on reasons that could not be applied to this case.

The case of *North River Boom Co. v. Smith,* 15 Wash. 438, 45 Pac. 750, is somewhat relied upon by appellant, from the statement therein made that boom companies were quasi public corporations. The writer of this opinion, being the writer of that, feels free to say that the opinion indulged in statements outside of the issues presented. The constitutional provision in question was not under consideration, the question being on the construction of § 28, art. 2, of the constitution, in relation to special legislation, and no authorities were cited even on that question. But a boom company, organized under the laws of the state to do a carrying business for the public, stands on a different footing from a private logging company in the exclusive prosecution of its own private business. One is, to a certain extent, a common carrier compelled to serve the public, while upon the other, no such duties are imposed. It is true the statute provides:

"That any other party owning or controlling timber tributary to any such stream or water-course condemned as aforesaid, and who has not joined in such condemnation, may have the right to use the same upon paying to the parties owning the right-of-way the proper proportion of the cost of such improvement and the expenses of maintaining the same, to be determined by the superior court of the proper county, if the parties cannot agree;"

but this in effect only increases the number of parties in the company and falls far short of imposing a public duty. And, in any event, we do not care to extend the doctrine which we have already announced.

It must be conceded, however, that there are quite a

number of decisions to the effect that the phrase "public use" should be construed to be synonymous with public benefit, and that, when it is determined that the use is of great benefit to the public at large, condemnation of private interests should be guaranteed, even though the use is not by the state or through any of its agencies. One of the most prominent and direct decisions thus holding is *Dayton Gold etc. Min. Co. v. Seawell*, 11 Nev. 394. There the broad doctrine was announced that any appropriation of private property under the right of eminent domain, for any purpose of great public benefit, interest, or advantage to the community, is a taking for public use; the application in that case being to condemn a strip of land in order to transport the wood, lumber, timbers, and other materials to enable it to conduct and carry on its business of mining. The law granting the privilege was sustained on the ground that mining was one of the leading industries of the state, and the principles above announced were applied. This is, in substance, the contention of the appellant in this case.

It seems to us, however, that this is the announcement of a dangerous doctrine, tending to encroach upon private rights which the constitution has attempted to safeguard, and to render such rights as uncertain and varying as are the interests of different localities and opinions of different judges on different branches of business. Under such a rule an act might be construed to be legal one year, because a certain business was found to be profitable to the community at large, and the next year held void because it appeared that the business was not a paying one. The constitution is the fundamental law. Its enactments, whether they constitute grants or limitations, are presumed to be stable and uniform, and to consistitute a check on the more mutable sentiment and actions of members of different legislatures. And it seems to us that the result of such a

·construction would be a virtual removal of any constitutional inhibition on legislative power in this respect, leaving the legislative will as free and untrammeled as in those states where the legislatures are permitted to act in consonance with the inherent power of sovereignty, and no constitutional enactments have intervened. It was no doubt for the purpose of preventing enthusiastic legislation, practically destroying this limitation, that the question of public use was especially submitted to the courts, who are, and should be, 'ever watchful in maintaining inviolate the constitutional rights of the citizen.

It cannot be that, within the meaning of the constitution, the distinction between public policy and public use is to be obliterated. It might be of unquestionable public policy, and for the best interests of the state, to allow condemnation of lands in every instance where it would result in aiding prosperous business enterprises which would give employment to labor, stimulate trade, increase property values, and thereby increase the revenues of the state, even if the enterprise was purely private; for such is the relation, under our form of government, between public and private prosperity that one cannot be enjoyed to any appreciable extent without favorably influencing the other. But it is evident that this was not the kind of public use that was within the minds of the framers of the constitution; and it seems to us that the logic of those courts which have sustained appellant's contention is justified solely on grounds of public policy.

It seems scarcely necessary to particularize to show to what extent this doctrine might practically be carried. Under such liberal construction, the brewer could successfully demand condemnation of his neighbor's land for the purpose of the erection of a brewery, because, forsooth, many citizens of the state are profitably engaged in the

cultivation of hops. Condemnation would be in order for grist mills, and for factories for manufacturing the cereals of the state, because there is a large agricultural interest to be sustained. Tanneries, woolen factories, oil refineries, distilleries, packing houses, and machine shops of almost every conceivable kind, would be entitled to some consideration for the same reasons; thereby actually destroying any distinctions between public and private use, for the principle in one instance is the same as in the other; the difference is only in degree.

So many of the cases cited by both appellant and respondents have been decided on so many different theories and branches of the law that it is unprofitable to specially notice them here. There are, however, many cases that directly deny the doctrine laid down in the Nevada case, *supra*, and we think that the concensus of judicial opinion is opposed to such liberal construction. As showing the confusion which would arise from such a construction, in our sister state of Oregon, where large timber interests predominate, as they do in this state, it was held in *Apex Transp. Co. v. Garbade,* 32 Ore. 582, 52 Pac. 573, that the law providing that any corporation organized to transport timber or wood should have the right to construct railroads and tramways, which should be deemed for the public use, subject to corporate rights to toll, and gives such corporations the right of condemnation which railways possess, was void under the constitutional provision in relation to public use; the court saying that, while it is difficult to give an exact definition of public use, within the meaning of the constitution, no rule founded on the adjudged cases could be so framed as to include the case under consideration; citing Lewis on Eminent Domain, § 165; Thompson on Corporations, § 5593; Cooley's Const. Lim., *p. 532; *Lumbering Co. v. Johnson,* 30 Ore. 205, 46 Pac. 790, 34

L. R. A. 368, 60 Am. St. 818; and many other cases.   In
California it has been held that rights of way for mining
purposes could not be condemned, under a similar consti-
tutional provision.   Much more in accordance with sound
reasoning, and even with true public policy when consid-
ered in the broadest sense, is the language of the court in
*Bloodgood v. Mohawk etc. R. Co.,* 18 Wend. 9, 31 Am.
Dec. 313, where, in discussing this question, it is said:

"When we depart from the natural import of the term
'public use,' and substitute for the simple idea of a pub-
lic possession and occupation, that of public utility, pub-
lic interest, common benefit, general advantage or con-
venience, or that still more indefinite term public im-
provement, is there any limitation which can be set to
the exertion of legislative will in the appropriation of
private property.   The moment the mode of its use is
disregarded, and we permit ourselves to be governed by
speculations, upon the benefits that may result to locali-
ties from the use which a man or set of men propose to
make of the property of another, that moment we are
afloat without any certain principle to guide us."

And again, after announcing the contention that the im-
provement proposed was of great value and usefulness,
productive of increase of comfort and convenience to indi-
viduals, and wealth and power to communities, the court
said:

"But is this enough to justify the conclusion, that be-
cause the use to which it is dedicated by its owners accom-
modate individuals, and thereby advances the public in-
terest, therefore it is such a public use that private prop-
erty may be taken to promote it.   Can the constitutional
expression, public use, be made synonymous with public
improvement, or general convenience and advantage, with-
out involving consequences inconsistent with the reason-
able security of private property; much more with that
security which the constitution guarantees.   If an inci-
dental benefit, resulting to the public from the mode in

which individuals in pursuit of their own interest use their property, will constitute a public use of it, within the intention of the constitution, it will be found very difficult to set limits to the power of appropriating private property."

Mr. Cooley, in his Constitutional Limitations, and Mr. Elliott, in his work on Eminent Domain, have given this subject special attention, and reviewed all the authorities bearing thereon, and, while detached expressions from these authorities, frequently made with reference to cases cited, seem to sustain both contentions, yet the general deduction made is opposed to the idea that public use and public benefit are synonymous terms. Mr. Lewis, in discussing this identical proposition, in § 165, after giving a history of the earlier decisions, concludes as follows:

"*Public use* means the same as *use by the public,* and this it seems to us is the construction the words should receive in the constitutional provision in question. The reasons which incline us to this view are: *First,* that it accords with the primary and more commonly understood meaning of the words; *second,* it accords with the general practice in regard to taking private property for public use in vogue when the phrase was first brought into use in the earlier constitutions; *third,* it is the only view which gives the words any force as a limitation or renders them capable of any definite and practical application. If the constitution means that private property can be taken only for use *by* the public, it affords a definite guide to both the legislature and the courts;"

and much more to the same effect which it is not practical to insert in this opinion. Mr. Cooley, under the head of "The Purpose," page 652, says:

"Nor could it be of importance that the public would receive incidental benefits, such as unsually spring from the improvement of lands or the establishment of prosperous private enterprises; the *public use* implies a possession, occupation, and enjoyment of the land by the pub-

lic at large, or by public agencies; and a due protection of the rights of private property will preclude the government from seizing it in the hands of the owner, and turning it over to another on vague grounds of public benefit to spring from the more profitable use to which the latter may devote it."

The citation of nearly all the cases bearing on this question will be found in Cooley's Const. Lim., and Lewis on Eminent Domain, and it is not necessary to reproduce them here. But from a consideration of all the authorities and from our own views on construction, we are of the opinion that the use under consideration must be either a use by the public, or by some agency which is quasi public, and not simply a use which may incidentally or indirectly promote the public interest or general prosperity of the state.

It is also contended by the appellant that, if the court should conclude that this was not such a public use as could be sustained, it has a right to this condemnation under the provision of the statute in relation to private ways of necessity. It is contended by the respondents that this action was not brought under the statute in relation to condemnation for private ways of necessity, and this seems to be true; but outside of this technical point the term private way of necessity" must be construed with reference to what was deemed a private way of necessity at the time of the adoption of the constitution; or, in other words, the common law definition of a private way of necessity. The rights asked for here do not fall within such definition. There is no element of a grant in this case upon which a private way of necessity is founded. "It is founded on an implied grant." 2 Blackstone's Commentaries (Hammond's Small ed.), 79.

"It is either created by express words or it is created by operation of law as incident to the grant, so that in both

cases the grant is the foundation to the title." 3 Kent's Commentaries, *p. 424 (14th ed.).

"   .   .   .   a way of necessity can only be raised out of land granted or reserved by the grantor, but not out of the land of a stranger.  For, if one owns land to which he has no access except over lands of a stranger, he has not thereby any right to go across these for the purpose of reaching his own." 2 Washburn on Real Property, p. 320 (5th ed.).

"It has never, we think, been decided in any case that private property could be condemned for a private road for the exclusive use of the applicant, and we know of no principle upon which such a proceeding can be justified." Lewis on Eminent Domain, p. 233.

"A way of necessity, when the nature of it is considered, will be found to be nothing else but a way of grant.  It derives its origin from a grant, for there seems to be no difference where a thing is granted by express words, and where by operation of law it passes as incident to the grant." Chitty's Notes to Blackstone's Commentaries, *p. 36.

"The statute authorizing the location of private roads, as far as it provides for the exercise of the right of eminent domain to establish them, is unconstitutional." *Wild v. Deig,* 43 Ind. 455, 13 Am. Rep. 399 (syllabus).

See also: *Dicky v. Tennison,* 27 Mo. 373; *Osborn v. Hart,* 24 Wis. 89, 1 Am. Rep. 161; *Taylor v. Porter,* 4 Hill 140, 40 Am. Dec. 274; *Long v. Billings,* 7 Wash. 267, 34 Pac. 936.

We have not overlooked the motion of respondents to dismiss this cause on the ground that the order is not appealable, but, with the view we have taken on the merits of the case, it is not necessary to discuss the question raised in the motion, and for the reason that other cases of similar import are pending in this court, we thought it best to decide the case on its merits.

The court not having committed error in sustaining the demurrer to the complaint, the judgment is affirmed.

FULLERTON, C. J., and ANDERS, MOUNT, and HADLEY, JJ., concur.