[No. 11648. *En Banc.* January 24, 1914.]

THE STATE OF WASHINGTON, *on the Relation of Mountain Timber Company, Plaintiff,* v. THE SUPERIOR COURT FOR COWLITZ COUNTY *et al., Respondents.*[1]

EMINENT DOMAIN—RIGHT OF STATE. The Federal constitution being a grant of power, and a state constitution a limitation of power, the right of eminent domain is not derived from the constitution, but is inherent in sovereignty, and apart from the constitutional prohibitions, need not be for public use.

EMINENT DOMAIN—TAKING PRIVATE PROPERTY—"PRIVATE WAYS OF NECESSITY." Const., art. 1, § 16, prohibiting the taking of private property for private use, except for "private ways of necessity," etc., does not use the term in its common law sense, so as to limit the exception to private ways of necessity appurtenant to some grant, but means "necessary private ways;" and it was within the constitutional powers of the legislature to define, by Laws, 1913, p. 412 (3 Rem. & Bal. Code, § 5857-1), a private way of necessity as including a logging road right of way necessary for the proper use and enjoyment of private timber lands, and to establish the procedure for condemning the same.

CONSTITUTIONAL LAW—DUE PROCESS OF LAW—EMINENT DOMAIN—TAKING PRIVATE PROPERTY. The taking of private property for private use for the promotion of the general welfare, upon due hearing and the payment of consideration, is not incompatible with the Federal guarantee of due process of law.

Certiorari to review a judgment of the superior court for Cowlitz county, Back, J., entered October 17, 1913, dismissing a proceeding to condemn a right of way for a logging road, upon sustaining a demurrer to the petition. Reversed.

*E. C. Strode, Imus & Gore,* and *Coy Burnett,* for relator.

*Miller, Crass & Wilkinson,* for respondents.

GOSE, J.—This is an application for a writ of certiorari to review the judgment of the superior court of Cowlitz county, denying to relator the right to condemn land for a right of way for a logging road. The relator seeks to condemn a

[1]Reported in 137 Pac. 994.

right of way for a logging road over and across land owned by the respondents Wiberg, in order that it may convey its timber from lands owned by it to its sawmill. The petition discloses that there is no outlet for a part of its timber other than over the respondents' lands, and that it cannot secure the right of way except by condemnation. A general demurrer to the petition was sustained, and a judgment adverse to the relator was entered.

Section 16, art. 1 of our constitution provides:

"Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having been first made."

Laws of 1913, page 412 (3 Rem. & Bal. Code, § 5857-1 *et seq.*), provide:

"Section 1. An owner, or one entitled to the beneficial use, of land which is so situate with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity . . . may condemn and take lands of such other sufficient in area for the construction and maintenance of such private way of necessity, . . . The term 'private way of necessity,' as used in this act, shall mean and include a right of way on, across, over or through the land of another for means of ingress and egress, and the construction and maintenance thereon of roads, logging roads, flumes, canals, ditches, tunnels, tramways and other structures upon, over and through which timber, stone, minerals or other valuable materials and products may be transported and carried."

Section 2 provides that the procedure and mode of compensation in such cases shall be the same as that provided for the condemnation of private property by railroad companies. The relator has brought itself within the provisions of the act by proper averments in its petition. The trial court sustained the demurrer because it thought the act un-

constitutional. The constitutionality of the act is the only question presented in the briefs or argued at the bar.

A recurrence to certain fundamental principles will be helpful in clearing the way for a correct solution of the question. One of these principles is that the Federal constitution is a grant of power. Another is that a state constitution is a limitation of power. Except as a state has surrendered to the Federal government a portion of its sovereignty or as it has limited its own power, it is wholly sovereign. It, therefore, follows that the power of eminent domain is not derived from the constitution, but exists independent of the constitution as an attribute of sovereignty. In short, it is a right which is inherent in sovereignty. *Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670. It follows, therefore, that in determining whether a legislative act is violative of the constitution of the state, we must look to that instrument not for the purpose of ascertaining whether the power to pass the particular law has been granted, but to see whether the power has been taken from the law makers. The general power to take private property for a private use, in the absence of constitutional restrictions, is thus stated by Mr. Lewis:

"Eminent domain is the right or power of a sovereign state to appropriate private property to particular uses, for the purpose of promoting the general welfare. . . Apart from constitutional considerations, it is not essential, in order to constitute an act of eminent domain, that the use for which the property is taken should be of a public nature, that is, a use in which the public participates, directly or indirectly, as in case of highways, railroads, public service plants and the like. It is sufficient that the use of the particular property for the purpose proposed, is necessary to enable individual proprietors to utilize and develop the natural resources of their land, as by reclaiming wet or arid tracts, improving a water power or working a mine. In such cases the public welfare is promoted by the increased prosperity which necessarily results from developing the natural resources of the country. Such exercises of the power of

eminent domain have been upheld by many courts, including the Supreme Court of the United States and, we think, must be regarded as legitimate exercises of the power, in the absence of constitutional restrictions which limit the taking to public uses." Lewis, Eminent Domain (3d ed.), § 1.

"The correct view is that the power of eminent domain is not a reserved, but an inherent right, a right which pertains to sovereignty as a necessary, constant and inextinguishable attribute." Id., § 3.

See, also, 15 Cyc. 557; *State v. County Commissioners*, 83 Ala. 304, 3 South. 761.

The respondents contend that the term "private ways of necessity" must be given its common law meaning. The theory of the common law is that, where land is sold that has no outlet, the vendor, by implication of law, grants one over the parcel of which he retains ownership. It passes as an appurtenance to the parcel expressly conveyed, so as to enable the grantee to have access to it. In short, a private way of necessity at common law rests in grant and passes with the parcel expressly granted. The consideration paid for the parcel expressly granted extends to and embraces the appurtenance. The common law right is wholly foreign to the power to take property by the exercise of eminent domain. The one proceeds from contract; the other from a proceeding *in invitum*. It follows that, if the argument is sound and the legislature is without power to define the term "private ways of necessity," and establish the procedure for the taking, the constitutional provision is without meaning. As we said in an earlier case, there were eminent lawyers in the convention which framed our constitution, and they will be presumed to have known the common law meaning of the term, and to have intended that it should be defined and construed so as to give it vitality and so as to give it a meaning in consonance with the subject of eminent domain. It seems to the writer that, in the beginning, it should have been construed to mean necessary private ways. But in the case of *Long v. Billings*, 7 Wash. 267, 34 Pac. 936, it was held that the term

should be given its common law meaning until the legislature
had defined it and established a procedure for making the
right usable.   In *Healy Lumber Co. v. Morris*, 33 Wash. 490,
74 Pac. 681, 99 Am. St. 964, 63 L. R. A. 820, the principal
question considered by the court was whether the contem-
plated use was a "public use," within the meaning of the con-
stitution, and whether that phrase was synonymous with
"public benefits."   At page 496, the court adverts to the
fact that our constitution makes it a judicial question whether
a given use is in fact a public use.   At pages 504 and 505,
the court recognizes that the legislature untrammeled by
constitutional restraint may, in the exercise of its sovereignty,
take private property for private use.   In that case, as in
*Long v. Billings*, the court adopted the common law defini-
tion of the phrase.   In *Sultan R. & Timber Co. v. Great Nor-
thern R. Co.*, 58 Wash. 604, 109 Pac. 320, 1020, in referring
to the *Healy Lumber Co.* case, we said:

"In this connection, however, the appellant makes the con-
tention that the respondent had no legal right to cross its
tracks with a private logging road, and that in consequence
it gave up nothing when it surrendered such claim of right.
The case of *Healy Lumber Co. v. Morris*, 33 Wash. 490, 74
Pac. 681, 99 Am. St. 964, 63 L. R. A. 820, is cited as sus-
taining this contention, but we cannot think the case conclu-
sive of the question.   It is true we did there hold that a log-
ging company performing no public function was without
power to condemn a way for a logging road, notwithstanding
the legislature had purported to confer on it that power,
but the question of the right of a logging company to con-
demn for such a way when the way was one of necessity was
neither presented nor decided.   The constitution (art. 1, sec.
16), grants the right to take private property for private
ways of necessity, and it was open to the respondent to claim
that the conditions then existing presented a sufficient cause
for the exercise of the right.   It is not necessary now that
we inquire how well founded was this claim.   It is enough that
the parties themselves treated it as a right and contracted
with reference to it."

*Schulenbarger v. Johnstone*, 64 Wash. 202, 116 Pac. 843, 35 L. R. A. (N. S.) 991, was decided before the passage of the act of 1913, and follows the *Healy Lumber Co.* case. We think the legislature acted within its constitutional powers in defining a private way of necessity and establishing the procedure for making the right available. As defined, it is promotive of the public welfare, in that it prevents a private individual from bottling up a portion of the resources of the state. In *Lamborn v. Bell*, 18 Colo. 346, 32 Pac. 989, 20 L. R. A. 241, in construing a constitutional provision identical in language with ours, the court said:

"It is apparent from the foregoing provisions that our constitution is, in certain particulars touching the right to take private property for private use, exceptional; and for certain enumerated uses changes the accepted rule that the use to which private property may be condemned must be public."

In *Jones v. Venable*, 120 Ga. 1, 47 S. E. 549, private parties engaged in the business of quarrying granite were permitted to condemn a right of way for a private railroad across the land of another so as to connect the quarry with a public service railroad. The court conceded that the enterprise was purely private. The Georgia constitution provided: "In cases of necessity private ways may be granted upon just compensation being first paid by the applicant." In *Sultan R. & Timber Co. v. Great Northern R. Co., supra,* it is said that "the constitution, art. 1, § 16, *grants* the right to take private property for private ways of necessity." This statement is not legally accurate. The constitution does not *grant* the right. It excepts the right from the general prohibition against taking private property for private use. In *Gasaway v. Seattle*, 52 Wash. 444, 100 Pac. 991, 21 L. R. A. (N. S.) 68, we said: "The power to condemn land is an attribute of sovereignty. It is a power recognized, not granted, by the constitution." The word "necessary" means

reasonably necessary.  *Samish River Boom Co. v. Union·
Boom Co., supra.*

The respondents have cited *Tacoma v. Nisqually Power
Co.*, 57 Wash. 420, 107 Pac. 199, and kindred cases from
this court.  In these cases the question before the court was
whether the contemplated use was a public one.  The cases
have no reference to private ways of necessity.  The respond-
ents have also cited a line of cases construing constitu-
tions which provide that no private property shall be taken
for public use without just compensation.  These words have
uniformly been construed as equivalent to a constitutional
declaration that private property without the consent of the
owner shall be taken only for public use, and then only upon
just compensation.  It is apparent that such cases throw
no light upon the question at bar.  Broad language may be
found in construing such constitutional provisions, but what
is said by the courts must be read in the light of the par-
ticular constitutional provision under consideration.  The re-
spondents have cited *Arnsperger v. Crawford*, 101 Md. 247,
61 Atl. 413, 70 L. R. A. 497.  The constitution of Mary-
land provides:

"The General Assembly shall enact no law authorizing pri-
vate property to be taken for public use, without just com-
pensation, as agreed upon between parties, or awarded by a
jury, being first paid or tendered, to the party entitled to
such compensation."

In construing this provision the court quoted from *New
Central Coal Co. v. George's Creek Coal & Iron Co.*, 37 Md.
537, 559, as follows:

"This [constitutional provision] is but declaratory of the
previously existing universal law, which forbids the arbitrary
and compulsory appropriation of any man's property to the
mere private use of another, even though compensation be
tendered."

This language, if accepted literally, means that the state,
in the absence of constitutional restraint, is not wholly sov-

·ereign.   It is, we believe, the universally accepted view that all property is derived from society.   1 Cooley's Blackstone (4th ed.), p. 434, and foot notes.   In *State v. Mountain Timber Co.*, 75 Wash. 581, 135 Pac. 645, this court quoting from *Bowes v. Aberdeen*, 58 Wash. 535, 109 Pac. 369, 30 L. R. A. (N. S.) 709, said, "The right of property is a legal right and not a natural right, and it must be measured always by reference to the rights of others and of the public."   If this be true, then there can be no universal law which, in the absence of constitutional restrictions, forbids a state from providing for the condemnation of private ways of necessity in furtherance of the development of its material resources.   To accept the broad language used in the Maryland case would be to hold that our constitution is itself unconstitutional.

The taking of private property for private use for the promotion of the general welfare, upon due notice and hearing and the payment of compensation, is not incompatible with due process of law, as guaranteed by the Federal constitution.   *Head v. Amoskeag Mfg. Co.*, 113 U. S. 9.

The judgment is reversed, with directions to overrule the demurrer.

ALL CONCUR.