[No. 18155.    Department One.    October 31, 1923.]

THE STATE OF WASHINGTON, *on the Relation of Eastern Railway & Lumber Company, Plaintiff*, v. THE SUPERIOR COURT FOR LEWIS COUNTY *et al., Respondents*.[1]

EMINENT DOMAIN (39, 40)—NECESSITY FOR APPROPRIATION—SELECTION OF ROUTE—EVIDENCE—SUFFICIENCY.  A finding of public necessity for the condemnation of a right of way for a logging road is sustained, where any other route would necessitate the hauling of logs over a ridge with an excessive grade and at an excessive cost; the courts not interfering with the selection of the route except in case of a clear showing of bad faith.

SAME (15)—DELEGATION OF POWER—PRIVATE WAYS FOR LOGGING ROADS.  Rem. Comp. Stat., §§ 6747-6749, authorizing the condemnation of a right of way for a logging road is not violative of the fourteenth amendment to the Federal constitution or § 16, of Art. 1, of the state constitution.

Certiorari to review an order of the superior court for Lewis county, Sheeks, J., entered July 23, 1923, declaring a public use and necessity in eminent domain proceedings for a logging right of way.  Affirmed.

*Bates & Peterson* and *C. D. Cunningham*, for appellant.

*Forney & Ponder* and *Troy & Yantis*, for respondents.

[1]Reported in 219 Pac. 857.

PARKER, J.—The relator, Eastern Railway & Lumber Company, seeks, in this court, review and reversal of an order of adjudication of necessity, rendered by the superior court for Lewis county, awarding to Susie A. Chatten and her associates, doing business under the name of Union Lumber Company, the right to condemn a private way of necessity for use as a logging road, over and across land in Lewis county belonging to Eastern Railway & Lumber Company.

Union Lumber Company owns and operates a large sawmill and logging plant in Thurston and Lewis counties. It also owns standing timber on sections 4 and 5, township 14 north, range 1 east, in Lewis county, aggregating some seventy-five million feet. It is to enable Union Lumber Company to log and remove this standing timber to market that this proposed right-of-way is sought by it. Union Lumber Company also owns a logging railroad extending over land which it has been logging lying to the north of and adjoining sections 4 and 5 above mentioned. Its easement right-of-way for this logging road expires on March 24, 1925, at or before which date it is required to remove its road from that land, and thereafter it will have no right or interest in that land. It is not practically possible for Union Lumber Company to log and remove its timber from sections 4 and 5 before the expiration of its easement rights in the land adjoining those sections upon the north. It has no other interest or easement rights in land enabling it to log and remove to market its timber upon sections 4 and 5.

The nearest point of Union Lumber Company's logging road to the north boundary of sections 4 or 5 is about a quarter of a mile on the northerly slope of a ridge or divide that runs approximately along the north boundary line of sections 4 and 5, dividing the valley of Coal creek to the north from the valley of

Hanaford creek to the south; so that, in order to project Union Lumber Company's present logging road south into sections 4 or 5, it would be necessary to go over a divide some two hundred feet or more high, by an incline track over which cars would have to be operated by a stationary engine or over a switch back with a somewhat excessive grade—in any event on the south slope; that is, to take the timber from sections 4 or 5 over that road, so projected, would necessitate hauling it up over the divide at a somewhat excessive cost and increased hazard over that incident to removing the timber over the right-of-way attempted to be acquired from Eastern Railway & Lumber Company by this proceeding; though probably such increased expense and hazard would not be entirely prohibitive from a profit point of view.

The stream and valley of Coal creek run roughly from east to west, joining Hanaford creek near the north quarter corner of section 1, which is 1½ miles west of the northwest corner of section 5. The present logging road of Union Lumber Company runs up Coal creek from the junction of the two creeks near this quarter section corner and has been used to log the land north of sections 4 and 5. Hanaford creek runs westerly through the north half of sections 4, 5 and 6, and northwesterly through the northeast quarter of section 1, joining Coal creek near the north quarter corner of section 1, as we have noticed. The Eastern Railway & Lumber Company owns the north half of section 6 and the northeast quarter of section 1.

It is to acquire a right-of-way as a private way of necessity by Union Lumber Company over this land of Eastern Railway & Lumber Company, for a distance of approximately 1¾ miles along the valley of Hanaford creek, that this proceeding was instituted in the

trial court.  A road constructed upon such right-of-way would be, as expressed by one of the witnesses, practically upon a water grade, being uniformly down grade from section 5 westerly to a junction with the present logging road of Union Lumber Company near the junction of the two creeks.  The evidence is somewhat conflicting as to the comparative cost of building a road over the divide from the present road of Union Lumber Company to the north boundary of section 5, and the building of a road from the junction of the two creeks, 1¾ miles up Hanaford creek to the west boundary of section 5; but it seems to us from the evidence that the comparative cost and practicability of operation after construction and the comparative safety of operation after construction is decidedly in favor of the Hanaford creek route, sought to be acquired by Union Lumber Company.  In the prosecution of the condemnation proceeding in the trial court, Union Lumber Company stated in its petition for condemnation its offer to carry and convey over the proposed road across the land of Eastern Railway & Lumber Company any of the timber or other products of the land through which the right-of-way is sought, at reasonable rates, as prescribed by § 6749, Rem. Comp. Stat. [P. C. § 7660].

It is contended in behalf of Eastern Railway & Lumber Company that there is not here shown such a necessity for Union Lumber Company's acquiring this proposed right-of-way as entitles it to acquire the land therefor by condemnation.  If we were to consider the feasibility of the proposed route, as compared with the feasibility of a route over the ridge to the north of section 5, and assume that Union Lumber Company had the right of easement over the latter route for an indefinite period or for a period long enough to give it

reasonable time to remove the timber from sections 4 and 5 over that route, we would even then be loath to disturb the conclusion of the trial court, having in mind the general rule, repeatedly expressed by us in similar cases, in substance, that the necessity warranting the exercise of the power of eminent domain under the applicable statute (Rem. Comp. Stat., § 6747), is a reasonable necessity under all the circumstances of the case. *State ex rel. Mountain Timber Co. v. Superior Court,* 77 Wash. 585, 137 Pac. 994; *State ex rel. Grays Harbor Logging Co. v. Superior Court,* 82 Wash. 503, 144 Pac. 722; *State ex rel. Carlson v. Superior Court,* 107 Wash. 228, 181 Pac. 689; *State ex rel. Stephens v. Superior Court,* 111 Wash. 205, 190 Pac. 234.

But this record, we think, shows that Union Lumber Company does not have an easement right-of-way to sections 4 or 5 for such reasonable length of time as would enable it to remove its timber from those sections. So, in its last analysis, we have a case, in substance, wherein Eastern Railway & Lumber Company is insisting that Union Lumber Company acquire a right-of-way for the removal of its timber from sections 4 and 5 over a route other than the proposed route of some 1¾ miles up Hanaford creek over land of Eastern Railway & Lumber Company. It is a general rule of eminent domain law that the condemnor has a right to select the route it desires to acquire a right-of-way for, which selection will not be disturbed or interfered with by the courts except in case of a clear showing of bad faith on the part of the condemnor in making such selection. This general rule was held to be applicable to the acquiring of private ways of necessity by condemnation as well as acquiring such rights-of-way for public use, in our decision in *State*

*ex rel. Grays Harbor Logging Co. v. Superior Court,*
82 Wash. 503, 144 Pac. 722. Manifestly there is not
any substantial ground in this case for arguing that
the selection by Union Lumber Company of the pro-
posed right-of-way up Hanaford creek over the land
of Eastern Railway & Lumber Company is attended
by bad faith on the part of Union Lumber Company.
Indeed, in any view of the case, we think the evidence
points to the Hanaford creek route as being more
feasible in all respects than a route over the divide to
the north of section 4 or 5. To acquire either one of
these routes by Union Lumber Company for the neces-
sary period of time would involve the exercise by that
company of the right of eminent domain here sought
to be invoked by it.

Some contention is made that the trial court erred
to the prejudice of Eastern Railway & Lumber Com-
pany in permitting Union Lumber Company to prove
upon the trial that it had options for the purchase of
other lumber situated so as to make its removal prac-
tical by way of the proposed way up Hanaford creek.
Even if this were error, we would not reverse the case
or remand it for new trial for that cause alone, in the
light of this whole record; since we would ignore it as
we have done in reaching our conclusions. Besides,
it is apparent that the trial court ignored this evidence
in its final disposition of the case; for it appears in its
findings and adjudication of necessity that the ad-
judication in favor of Union Lumber Company was for
the express purpose of enabling it to remove and
market its timber now standing on sections 4 and 5,
no other timber being mentioned therein. To what
extent it may have the right, in the future, to remove
other timber over this proposed way of necessity, is a
matter with which we are not now concerned.

Contention is here made, as it was in the trial court, in behalf of Eastern Railway & Lumber Company, that Union Lumber Company should be denied its claimed right of eminent domain here sought to be exercised, because the statute purporting to authorize the exercise of such right (Rem. Comp. Stat., §§ 6747-6749 [P. C. §§ 7658, 7660], is unconstitutional in that, as invoked and given effect by the trial court's adjudication, it is violative of the rights of Eastern Railway & Lumber Company guaranteed by the fourteenth amendment to the constitution of the United States and § 16, of art. I, of the constitution of the state of Washington. Our decisions in *State ex rel. Mountain Timber Company v. Superior Court,* 77 Wash. 585, 137 Pac. 994; and *State ex rel. Grays Harbor Logging Co. v. Superior Court,* 82 Wash. 503, 144 Pac. 722, are decisive against Eastern Railway & Lumber Company upon this question.

We conclude that the order and adjudication of necessity here sought to be reviewed and reversed must be affirmed.

It is so ordered.

MAIN, C. J., MITCHELL, TOLMAN, and PEMBERTON, JJ., concur.