[No. 18824. Department One. September 23, 1924.]

THE STATE OF WASHINGTON, *on the Relation of Seattle Milk Shippers' Association, Plaintiff*, v. THE SUPERIOR COURT FOR SNOHOMISH COUNTY, *Guy C. Alston, Judge, et al., Respondents.*[1]

INJUNCTION (55, 56)—RIGHT TO RELIEF—"PRELIMINARY" OR TEMPORARY INJUNCTION—STATUTES—CONSTRUCTION. Rem. Comp. Stat., § 2892, authorizing a "preliminary injunction" in actions brought by a marketing association to enforce membership contracts, refers to an injunctional order after a hearing had upon notice, and does not give an absolute right thereto upon the allegations of the complaint.

CERTIORARI (5)—WHEN LIES—DENIAL OF TEMPORARY INJUNCTION—REMEDY BY APPEAL. Under Rem. Comp. Stat., § 1716, providing that no appeal lies from an order denying a temporary injunction, unless the judge shall find that the defendant is insolvent, an order denying a temporary injunction to remain in force pending final determination of the suit cannot be reviewed on certiorari, where the court correctly found that the defendants are solvent.

Application filed in the supreme court August 8, 1923, for a writ of certiorari to review an order of the superior court for Snohomish county, Alston, J., entered August 6, 1924, denying a temporary injunction. Denied.

*Farrell, Meier & Hess*, for relator.

PARKER, J.—This is an original certiorari proceeding in this court wherein the relator, Seattle Milk Shippers' Association, seeks review and reversal of an order of the superior court for Snohomish county, denying to it a preliminary injunction restraining B. A. Barker and Dan Barker, alleged to be partners in the operation of a dairy in that county and members of relator, from selling their milk other than to or

[1] Reported in 228 Pac. 847.

through relator, pending its application in the case for a permanent injunction in that behalf. The cause comes to us upon the application of relator and the answers of the respondents, judge of the superior court, B. A. Barker and Dan Barker, and we shall assume for argument's sake, upon all of the evidence introduced upon the hearing in the superior court touching the question of relator's right to such preliminary injunction, though as to the latter it may well be doubted, that it has been properly certified to us.

The controlling facts, as we view the record and as evidently viewed by the trial judge, may be summarized as follows: Relator has been at all times in question a cooperative marketing association organized under our cooperative marketing act, being ch. 115, p. 357, of the Laws of 1921, and also §§ 2878 to 2909, inclusive, of Rem. Comp. Stat. [P. C. §§ 134-47 to 134-77]. On December 23, 1921, B. A. Barker became and ever since has remained, a member of relator under the uniform membership contract then signed by him, wherein he agreed, among other things, as follows:

"The Dairyman [B. A. Barker], for and in consideration of the mutual covenants and agreements hereinafter contained to be kept and performed, hereby agrees to sell exclusively to or through the Association, or any facilities to be created by it, from this date to the first of June, 1926, all milk produced or controlled by the Dairyman in the state of Washington, or in which he may have any interest either as landlord, tenant or otherwise (except such amount as the Dairyman shall require for his personal use)."

On July 24, 1924, relator commenced, in the superior court for Snohomish county, an action against B. A. Barker and Dan Barker, seeking a preliminary injunction restraining them from selling or disposing of milk other than to or through relator; alleging them

to be partners and, as such, operators of a dairy in that county, and to be members of relator bound by contract to it in terms as above quoted from the uniform membership contract, and that they were violating such contract obligation by selling and disposing of milk to others than relator. Upon an *ex parte* application made in that action in behalf of relator, the court issued a temporary restraining order against B. A. Barker as prayed for; but refused to issue such a restraining order against Dan Barker, this manifestly upon the theory that, notwithstanding the general allegation of the complaint, by the exhibits attached thereto the court concluded that he was not a member of, or under any obligation as such to, relator.

On August 6, 1924, there came on for hearing the question of whether or not relator was entitled to a preliminary injunction against both B. A. Barker and Dan Barker, pending the final determination of the question of whether or not relator should be awarded a permanent injunction against them as prayed for. At that hearing all of the parties appeared and evidence was introduced in behalf of each of them. That hearing being concluded, the court denied the application for a preliminary injunction as to both B. A. Barker and Dan Barker, manifestly upon the theory that they were not partners and were not then jointly owners or operators of any dairy, and were not jointly producers of any dairy products; that B. A. Barker was no longer the owner of any dairy or the producer of any dairy products, and was not selling any dairy products to anyone; and that Dan Barker was not then and never had been a member of relator, or under any obligation to it, though he was then the owner of cows and a dairy and was producing dairy products, a portion of which cows had, prior to July 1, 1924, been the

property of B. A. Barker, but of which cows he had, on about that date, acquired absolute ownership. As we read the evidence, it seems to us to overwhelmingly support this view of the facts as they existed at the time of the commencement of this action. In the order denying the application for a preliminary injunction the court expressly finds that neither B. A. Barker nor Dan Barker is insolvent.

Counsel for relator contend that it is entitled to a preliminary injunction against both B. A. and Dan Barker as prayed for, as a matter of absolute right upon the bare allegations of its complaint, and in that behalf invoke the provisions of § 2892, Rem. Comp. Stat. [P. C. § 134-60], reading as follows:

"The association and its members may make and execute marketing contracts, requiring the members to sell, for any period of time not over ten years, all or any specified part of their agricultural products or specified commodities exclusively to or through the association or any facilities to be created by the association.    .    .    .    The by-laws and the marketing contract may fix as liquidated damages specific sums to be paid by the member or stockholder to the association upon the breach by him of any provision of the marketing contract regarding the sale or delivery or withholding of products;    .    .    .    In the event of any such breach or threatened breach of such marketing contract by a member, the association shall be entitled to an injunction to prevent the further breach of the contract, and to a decree of specific performance thereof. Pending the adjudication of such an action and upon filing a verified complaint showing the breach or threatened breach, and upon filing a sufficient bond, the association shall be entitled to a temporary restraining order and preliminary injunction against the member."

Our law has, since early territorial days, recognized a marked distinction between temporary restraining

orders and preliminary injunctions pending the final disposition of a cause. The former may be granted *ex parte* on emergent showing, to remain in force until upon due notice a hearing can be had upon the question of the granting of a preliminary injunction pending the final disposition of the cause. Sections 722 and 1716, Rem. Comp. Stat. [P. C. §§ 8056, 7290]. This is a distinction generally recognized elsewhere in this country. 3 Bouvier's Law Dictionary, Rawles Revision, 2924; 1 High, Injunctions (4th ed), § 3; 32 C. J. 27; 14 R. C. L. 306. Now if the legislature did not, in the above quoted language of § 2892, use the words "temporary restraining order and preliminary injunction" in this sense and in recognition of this distinction, it is to us inconceivable why they should have used both terms. We think the use of the words "preliminary injunction" was in the sense of an injunction to be awarded, if at all, upon notice and hearing and upon the exercise of discretion upon the part of the court, to remain in force pending the final disposition of the cause, and that relator was not entitled to such an injunction as a mere matter of right upon the allegations of its complaint; though it may have been so entitled to a temporary restraining order until a hearing could be had upon the question of the awarding of a preliminary injunction, as to which we need not now decide.

We have used the term "preliminary injunction," that being the term used in the statute above quoted upon which relator relies, and also the term used in the prayer of its complaint. We think this term as used by the legislature means the same as "temporary" or "interlocutory" injunction; that is, an injunction awarded after a hearing, to remain in force pending the final disposition of the cause. All of these terms

are used by the courts and law writers as having this meaning; 1 High, Injunctions (4th ed.), § 3; 32 C. J. 20; 14 R. C. L. 312; 2 Bouvier's Law Dictionary, Rawles Revision, 1570; though this court and members of the bar in this state have seemingly for the most part used the term "temporary injunction," it being so used in the following cases: *Gordon v. Parke & Lacy Mach. Co.,* 10 Wash. 18, 38 Pac. 755; *Cady v. Case,* 11 Wash. 124, 39 Pac. 375; *Rockfort Watch Co. v. Rumpf,* 12 Wash. 647, 42 Pac. 213; *State ex rel. Byers v. Superior Court,* 28 Wash. 403, 68 Pac. 865; *State v. Nicoll,* 40 Wash. 517, 82 Pac. 895. However, in *Swope v. Seattle,* 35 Wash. 69, 76 Pac. 517, we find Judge Anders using, to express the same meaning, the term "preliminary injunction."

In § 1716, Rem. Comp. Stat. [P. C. § 7290], relating to appeals from the superior court to this court, we read:

"No appeal shall be allowed from any order denying a motion for a temporary injunction, or vacating a temporary injunction unless the judge of the superior court shall have found upon the hearing, that the party against whom the injunction was sought was insolvent."

We have held that, no appeal being allowed in such cases, certiorari will not be entertained as a means of review in such cases; that is, we will not directly review claims of error in denying or vacating a temporary injunction where the judge has made no finding of insolvency (*State ex rel. Mohr v. Superior Court,* 54 Wash. 225, 103 Pac. 17; *State ex rel. Coombs v. Superior Court,* 69 Wash. 439, 125 Pac. 779) ; though we will, in a proper case, by certiorari review a refusal of a trial court to make such a finding, as we did in *State ex rel. Marshall v. Superior Court,* 119 Wash. 631, 206

Pac. 362. There seems to be no serious contention made here that the trial court erred in its finding that neither B. A. nor Dan Barker was insolvent. Indeed, in the light of the evidence in this record, we see no room for so contending.

We conclude that there is presented nothing but an attempted review of an order of the superior court denying a motion for a temporary injunction, accompanied by a correct finding of solvency of the parties against whom it is sought. Whether we view this controversy upon the merits or upon the question of relator being entitled to such a review by certiorari rather than by appeal, we are clear that the relief here sought should be denied and the proceeding dismissed. It is so ordered.

TOLMAN and HOLCOMB, JJ., concur.