[No. 20725. Department One. October 13, 1927.]

THE STATE OF WASHINGTON, *on the Relation of Clara E. Huntoon, Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY, *et al., Respondents.*[1]

[1] EMININT DOMAIN (15)—EXTENT OF POWER—PRIVATE WAYS OF NECESSITY—STATUTES—CONSTRUCTION. Rem. Comp. Stat., § 6747, authorizing the condemnation of a private way of necessity *"or"* to construct drain flumes, etc., for certain purposes (private way being defined as a right of way for means of ingress and egress *"and"* for the construction of roads, flumes, etc., for certain purposes) does not confine the right to the additional purposes enumerated, which merely expands and does not limit the generally understood meaning of a private way of necessity.

[2] SAME (13, 15)—TAKING FOR PRIVATE USE—PRIVATE WAYS OF NECESSITY—CONSTITUTIONAL RESTRICTIONS. Const., Art. 1 § 16, forbidding the taking of private property except for private ways of necessity expressly authorizes a condemnation for a private way of necessity.

[3] SAME (13, 15). Rem. Comp. Stat., § 6747, authorizing the condemnation of a private way of necessity does not violate any of the provisions of the Federal constitution.

[4] SAME (15, 39)—PRIVATE WAYS OF NECESSITY—NECESSITY FOR APPROPRIATION. A necessity for the condemnation of a private way of necessity is sufficiently shown where the land to be served is physically separated by a lake from lands leading to a highway, and not accessible from a practical standpoint.

[5] SAME (15, 39). A condemnation for a private way of necessity cannot be objected to in that it merely leads to the land of one B. and not to any public highway, where the decree of necessity makes it a condition that B. grant an easement to the public as a highway, connecting the private way with a public road.

[6] SAME (175, 176)—TITLE OR RIGHTS ACQUIRED—DECREE—NATURE OF INTEREST—TIME OF PASSING TITLE. In condemnation for a private way of necessity granted on the condition of the grant of an easement to the public connecting the private way with a public road, objection to the decree cannot be made because of the informal manner in which the condition was incorporated in the judgment without being set forth in the petition.

[1]Reported in 260 Pac. 527.

Certiorari to review a judgment of the superior court for King county, Griffiths, J., entered June 23, 1927, decreeing a necessity for the condemnation of a private way of necessity, after a trial to the court. Affirmed.

*Joseph M. Glasgow,* for relator.

*John P. Gallagher* and *C. C. Curtis,* for respondents.

PARKER, J.—This is a certiorari proceeding in this court wherein the relator, Mrs. Huntoon, seeks review and reversal of a decree of the superior court for King county, adjudicating and awarding to George H. Boucher and Clayton N. Boswell the right to acquire, by condemnation, a private way of necessity over land of Mrs. Huntoon for ingress and egress between their land and a public highway.

In June, 1908, Boucher acquired title to the twenty-acre tract described as the north half of the northwest quarter of the southwest quarter of section 19, township 26, north, range 4, east, lying a short distance north of the present northerly city limits of Seattle. On June 27, 1926, Boucher entered into a contract with Boswell for the sale to him of the "North 300 feet of the East 200 feet" of that tract, for an agreed purchase price of $3,000; Boswell being given the right of beneficial use thereof pending the payment of the agreed purchase price.

At the time of entering into this contract and since then, Boucher has continued to own at least a large portion of the twenty-acre tract acquired by him in June, 1908, which land at all times in question has been immediately contiguous to public highways, one adjoining it upon the west, and others being within a considerable portion of the twenty-acre tract platted into lots and public streets in the plat known as "Bitter Lake Villa Tracts."

A large portion of the twenty-acre tract is permanently covered by the waters of Bitter Lake, which is about one-quarter of a mile long, measured northwest and southeast, and is of an average width of about one-eighth of a mile, measured from southwest to northeast. The lake extends clear across the twenty-acre tract so that the larger portion of the upland lies to the southwest of the lake, while a portion of the tract contracted to be sold to Boswell is upland lying to the northeast of the lake, these respective portions being physically separated by the lake. The only present way of lawful ingress or egress to or from that portion of the twenty-acre tract lying to the northeast · of the lake is over the waters of the lake to the west, since neither Boucher nor Boswell owns any land bordering on that land, and there is no highway abutting thereon.

Boswell has entered into a contract with the Marine National Bank for the purchase from it of lots 4 and 5, block 5, of the plat of Allendale, for an agreed purchase price of $1,400, Boswell being given the beneficial use thereof pending the payment of the purchase price. These lots are bounded on the north by an established public highway known as Allen Boulevard. Their south boundary is on the same east and west line projected as the north boundary of the Boucher tract, and the northeast corner of that tract is one hundred feet west of the southwest corner of lot 5. Mrs. Huntoon owns some sixteen acres of land bounded on the north by the line running east from the northwest corner of the Boucher tract, and on the west by the line running south from the northwest corner of the Boucher tract.

Boucher and Boswell commenced this eminent domain proceeding seeking a way of necessity over a strip of land in the northwest corner of Mrs. Huntoon's land, ten feet by one hundred and fifteen feet, extend-

ing east from the northeast corner of the Boucher
tract to a point ten feet east of the southwest corner
of lot 5, owned by the Marine National Bank and con-
tracted to be sold to Boswell. The trial court rendered
a decree of necessity, awarding to Boucher and Bos-
well the right to acquire by condemnation the right of
way sought as a way of necessity, conditioned that
they cause to be granted an easement to the public over
the west ten feet of lot 5 as a public highway, and
thus make the way sought to be acquired over Mrs.
Huntoon's land connect with the public highway,
Allen Boulevard. The annexed plat will render the
geography of the situation more readily understand-
able.

This condemnation proceeding manifestly is prose-
cuted under ch. 133, Laws of 1913, p. 412, Rem. Comp.
Stat., §§ 6747-8-9. In view of the interpretation of this
act for which counsel for Mrs. Huntoon contends, let
us notice the whole of the language of its title and its
first section, the other sections having to do only with
procedure:

"AN ACT relating to the taking of private property
for private ways of necessity and for drains, flumes
and ditches on or across the lands of others for agricul-
tural, domestic or sanitary purposes.

"Be it enacted by the Legislature of the State of
Washington:

"Section 1. An owner, or one entitled to the bene-
ficial use, of land which is so situate with respect to
the land of another that it is necessary for its proper
use and enjoyment to have and maintain a private way
of necessity or to construct and maintain any drain,
flume or ditch, on, across, over or through the land of
such other, for agricultural, domestic or sanitary pur-
poses, may condemn and take lands of such other suf-
ficient in area for the construction and maintenance of
such private way of necessity, or for the construction
and maintenance of such drain, flume or ditch, as the
case may be. The term 'private way of necessity,' as

used in this act, shall mean and include a right of way on, across, over or through the land of another for means of ingress and egress, and the construction and maintenance thereon of roads, logging roads, flumes, canals, ditches, tunnels, tramways and other structures upon, over and through which timber, stone, minerals or other valuable materials and products may be transported and carried." [Rem. Comp. Stat., § 6747.]

[1] It is contended in behalf of relator that this language does not grant the eminent domain right to acquire private ways of necessity merely for means of ingress or egress. The argument seems to be that this is a grant of the right of eminent domain for the acquisition of rights of way only for

"  .  .  .  the construction and maintenance thereon of roads, logging roads, flumes, canals, ditches, tunnels, tramways and other structures upon, over and through which timber, stone, minerals or other valuable materials and products may be transported and carried;"

that is, that the concluding words exclude mere ingress and egress, apart from the transporting of the enumerated materials.

Looking to all of the language of § 1, especially in view of the language of the title, it seems to us that there is therein expressed a legislative intent to provide for the acquisition of private ways of necessity for "ingress and egress" in the ordinary sense of a way, when the land is so situated with respect to land of others that it is physically inaccessible to a public highway. The language of the title is "for private ways of necessity *and* for drains, flumes, etc." The language of § 1 is "private way of necessity *or* to construct and maintain any drain, flume, etc.;" and further,

"  .  .  .  private way of necessity, as used in this act, shall mean and include a right of way on, across,

over or through the land of another for means of ingress and egress, *and* the construction and maintenance thereon of roads, logging roads, etc.''

It seems to us that the enumeration of uses is an expression of legislative intent to expand, rather than limit, the generally understood meaning of ''private way'' or ''private way of necessity.''

[2] It is contended in behalf of Mrs. Huntoon that the taking of land for a private way of necessity, as is here sought by Boucher and Boswell and awarded by the trial court, is in violation of rights guaranteed to her by § 16, article 1, of our state constitution. That section of our constitution reads in part as follows:

''Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes.''

This language seems, by the strongest kind of implication, to authorize the legislature to provide for the taking of private property ''for private ways of necessity,'' as well as for strict public use, and prescribe reasonable restrictions upon and methods of exercising eminent domain power in that behalf.

[3] It is also contended in behalf of Mrs. Huntoon that such taking is in violation of rights guaranteed to her by the fourteenth amendment to the constitution of the United States. This court has repeatedly held that ch. 133, Laws of 1913, p. 412, here drawn in question, is not violative of any rights guaranteed by the state or federal constitution. *State ex rel. Mountain Timber Co. v. Superior Court,* 77 Wash. 585, 137 Pac. 994; *State ex rel. Grays Harbor Logging Co. v. Superior Court,* 82 Wash. 503, 144 Pac. 722; *State ex rel. Eastern R. & L. Co. v. Superior Court,* 127 Wash. 30, 219 Pac. 857; *State ex rel. White Pine Sash Co. v. Superior Court,* 143 Wash. 687, 255 Pac. 1025.

[4]  Some contention is made in behalf of Mrs.
Huntoon that, in any event, there has not been here
shown such a clear necessity as warranted the trial
court in adjudicating that Boucher and Boswell should
be permitted to exercise the right of eminent domain in
the acquisition of the proposed way of necessity.  The
argument seems to be that because the land under the
waters of Bitter Lake and a considerable portion
thereof to the west owned by Boucher will furnish ac-
cess from the public highways on the west to and from
the tract in the northeast corner of Boucher's twenty-
acre tract, which he has contracted to sell to Boswell,
that land, has in a legal sense, access to public high-
ways.

The well established fact remains, however, that that
land in the northeast corner of Boucher's twenty-acre
tract—that is, that land so far as it lies above the
water of the lake—is physically separated from that
portion of the twenty-acre tract which lies to the west
and southwest of the lake; and, while not absolutely
inaccessible to and from public highways to the west
and southwest of the lake, it is manifestly not accessi-
ble from any practical standpoint.  Viewing the whole
situation, we think that there has been here shown a
sufficient necessity to warrant the exercise of the con-
demnation right sought by Boucher and Boswell.

[5]  Some contention is made rested upon the fact
that the acquisition of this proposed way of necessity,
viewed within itself, has only the effect of connecting
the Boucher tract with the bank's lot 5, for the pur-
chase of which Boswell has contracted, and that there-
fore the proposed way of necessity does not furnish
access to a public highway to and from the Boucher
tract.  The decree of necessity, however, as we have
noticed, makes it a condition of the awarding of the
exercise of the condemnation right by Boucher and

Boswell that they cause to be executed an easement grant to the public as a highway over the west ten feet of lot 5, thus connecting up the proposed private way of necessity with the boulevard by what will in effect become a public highway. It is true that the bank, the fee owner of lot 5, is not a party defendant to the condemnation proceeding, but the right of Boucher and Boswell to exercise their condemnation right for the purpose of acquiring the way of necessity over Mrs. Huntoon's land is withheld from them by the terms of the decree until they cause a public easement to be effectually granted over the west ten feet of lot 5. The decree is possibly not very happily worded in this respect, but we think this is its meaning.

[6] Counsel for relator seems to take exception to the manner in which this condition was brought into the decree, that is, by oral offer made by counsel for Boucher and Boswell during the hearing in the superior court and not originally set forth in the petition in the condemnation proceeding; but we think the fact that it came into the decree in this informal way does not mitigate against its effectiveness. Our decisions in *State ex rel. Stephens v. Superior Court,* 111 Wash. 205, 190 Pac. 234, and *State ex rel. Seymour v. Superior Court,* 122 Wash. 255, 210 Pac. 380, are in harmony with this conclusion.

Some other claims of error are made, but we think, in so far as they call for discussion, they are sufficiently disposed of by the foregoing discussion of the case.

The decree of necessity is affirmed.

MACKINTOSH, C. J., MITCHELL, TOLMAN, and FRENCH, JJ., concur.