[No. 24898. Department Two. April 23, 1934.]

HOWARD H. HANSEN, *as State Supervisor of Banking, Respondent,* v. MARY A. RUNKEL, *as Executrix, et al., Appellants.*[1]

*Hyland, Elvidge & Alvord,* for appellants.

*Bausman, Oldham, Cohen & Jarvis* and *Simon Wampold, Jr.,* for respondent.

[1] Reported in 32 P. (2d) 103.

HOLCOMB, J.—Respondent, state supervisor of bank-ing, as liquidator of the Spokane Savings Bank, brought this action against appellants, stating two causes of action, one attempting to allege an implied easement over and across certain real estate; the second stating a cause of action for condemnation of private way of necessity over the same land.

The temporary restraining order was granted with-out notice, a previous one having been dissolved, and appellants were restrained from placing any obstruc-tion across the driveway extending over and across lots 11 to 15, inclusive, of block 5, Avenue Addition to West Seattle, King County, Washington, which lots belonged to appellants. Prior to the return day on the order to show cause, appellants moved to dissolve the temporary restraining order, affidavits were submitted in support of their motion, and upon a hearing being had, a temporary injunction was granted, from which order this appeal is prosecuted.

A motion to dismiss the appeal is made by respond-ent in its brief for an alleged defect in naming the adverse parties in the appeal bond, which is not well founded, and is denied.

The statement of facts herein shows substantially the following uncontroverted facts:

On and prior to May 6, 1927, Phillip L. Runkel and Mary A. Runkel, his wife, were the owners of the whole of block 5, Avenue Addition to West Seattle, King county, Washington, consisting of twenty lots bounded on the north by Spokane street, on the south by Mann-ing street, on the east by Forty-second avenue South-west, and on the west by California avenue. On that date, they made and executed four certain warranty deeds: one conveying lots 1 to 5, inclusive; another, lots 6 to 10, inclusive; another, lots 11 to 15, inclusive;

and another, lots 16 to 20, inclusive. At the same time and place, in order to secure the payment of certain sums of money, the grantees in those deeds, namely: James H. Robinson and Maude Robinson, his wife, gave four mortgages on the four parcels of property to Runkel.

All of the mortgages were paid in full by the mortgagors except that covering lots 11 to 15, inclusive, in the principal sum of seven thousand dollars, which had been duly recorded in the records of King county, Washington. That mortgage and the note secured thereby remained unpaid. Runkel and wife commenced an action in the superior court for King county, Washington, against Robinson and wife, and others, among which was Spokane Savings & Loan Society, a copy of which complaint was made a part of the statement of facts herein.

It was alleged in it, among other things, that the mortgage was executed and delivered, and that any interest any of the defendants in that action, including the Spokane Savings & Loan Society, had in and to lots 11 to 15, inclusive, was subordinate and subject to the lien and claim of the mortgage, a copy of which mortgage was attached to the complaint. Each and all of the defendants therein were duly, regularly and personally served with summons and complaint, and none of them appearing, an order of default was entered, a copy of which was attached to an affidavit made by Mary A. Runkel in the statement of facts.

Findings of fact and conclusions of law were made and a decree entered, in each of which it was set forth that all of the defendants, including the Spokane Savings & Loan Society, were duly, regularly and personally served with the summons and complaint. The property was sold pursuant to an order of sale in that action by the sheriff of King county, a cer-

tificate of purchase issued, and when the period of redemption expired, a sheriff's deed was issued, which deed is properly recorded in the records of King county, Washington. At no time did appellants know that any of the defendants in that action were claiming any interest in or to the property, or any part thereof, in this action. The only deed that appellants ever gave to James H. Robinson, or any other person, is that above mentioned.

Robinson and wife afterwards executed a deed to the Essex Security Company covering lots 6 to 10, inclusive, which deed refers to an easement over the west five feet of such lots for driveway granted by deed bearing a certain county auditor's file number, which deed is one from Robinson and wife to Henry M. Clay and Minnie M. Clay, his wife, Jennie E. Brennan, a widow, and Robert A. Brennan, a bachelor, and covers lots 1 to 5, inclusive and lots 16 to 20, inclusive, and also an easement for a driveway, or alley, for the use and benefit of the owners of those lots over and across the west five feet of lots 6 to 10, inclusive, and over and across the east five feet of lots 11 to 15, inclusive, of block 5. In other words, the deed makes the ten-foot strip an alley for the benefit of the north half of the block. The Runkels did not join in that deed, and the grantees in the deed were all made parties to the foreclosure. At no time did Clay and wife, or either Brennan, ever convey any interest in the easement to the predecessor in interest of respondent or to him.

Subsequently, the Essex Security Company, by deed dated February 5, 1929, conveyed lots 6 to 10, inclusive, to the Dime & Dollar Savings Bank, together with an easement over the west five feet of those lots for driveway granted by the deed heretofore referred to from Robinson and wife to Clay and wife, Brennan,

a widow, and Brennan, a bachelor. The Dime & Dollar Savings Bank thereafter, on October 20, 1931, quitclaimed lots 6 to 10, inclusive, to the Seattle Company, and the Seattle Company, by deed dated June 14, 1932, quitclaimed lots 6 to 10, inclusive, to the Cooper Mortgage Company. No mention is made in the latter two deeds of any easement on or across lots 11 to 15, inclusive.

It appears that, after Robinson acquired the several parcels of land from the Runkels, he disposed of the north half of this block and built an apartment house on lots 6 to 10, inclusive. At the time of the building of the apartment house on lots 6 to 10, inclusive, he owned the title to lots 11 to 15, inclusive. When he built his apartment house on lots 6 to 10, inclusive, Robinson built it so close to the Manning street side that it was 2.6 feet, and his garage was 9.15 feet, from the property line. At all times while Robinson was building on lots 6 to 10, inclusive, Runkel had the mortgage on lots 11 to 15, inclusive, which was foreclosed and the property sold. In that action, the Spokane Savings & Loan Society was made a party, but failed to appear, and was decreed to have no interest therein.

The claim of an implied easement is apparently based by respondent upon the mere fact that Robinson built his apartment house too close to the property that he then owned, which was the other portion of the block, lots 11 to 15, inclusive, on which was the mortgage which was owned and foreclosed by appellants in that case. No claim is made that the Runkels ever gave any right-of-way across their property, nor that respondent and his predecessor in interest used a portion of the Runkel property for ingress and egress.

The title to lots 6 to 10, inclusive, is now in Spokane Depositors Company, owned by the Spokane Saving Bank, successor of the Spokane Savings & Loan

Society, now being liquidated by respondent, and title to lots 11 to 15, inclusive, is still in appellants.

Appellants threatened to close the driveway and prevent its use by the occupants of the apartments for access to the garage.

Respondent persuaded the trial court that Rem. Rev. Stat., § 719, authorized the granting of a temporary restraining order without notice and continuing it in force as a temporary injunction.

Section 719 provides in part as follows:

"When it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of some act the commission or continuance of which during the litigation would produce great injury to the plaintiff; . . . an injunction may be granted to restrain such act or proceedings until the further order of the court, which may afterwards be dissolved or modified upon motion."

There must be something more, however, as is shown by the quotation from 14 R. C. L. 312:

"Hence there are two essential conditions to the granting of even temporary injunctions: First, the complaint must allege facts which appear to be sufficient to constitute a cause of action for injunction; and, second, on the entire showing from both sides it must appear, in view of all the circumstances, that the injunction is reasonably necessary to protect the legal rights of the plaintiff pending the litigation."

Respondent cites and relies upon *Rowland v. Kellogg Power & Water Co.*, 40 Ida. 216, 233 Pac. 869, as an analogous case. An extensive quotation is made from it, but the gist of it is to the effect that, if complainant has made out a *prima facie* case, or if from the pleadings and the conflicting affidavits it appears to the court that a case is presented proper for its investiga-

tion on a final hearing, a preliminary injunction may issue to maintain the status quo.

That is quite correct, and we agree therewith. The difficulty is that a *prima facie* case must appear from the pleadings that a proper case for injunctive relief is presented.

■ Under the first cause of action alleging what is meant to amount to a right to an implied easement, respondent relies on *Bailey v. Hennessey,* 112 Wash. 45, 191 Pac. 863. There is a clear distinction between the case at bar and that. In that case, a right had been initiated by the owner of the whole tract of land which inured to the benefit of the portion owned by Bailey, which is not true here. In this case, the Runkels never initiated in any form the rights which the Spokane Depositors Company, or respondent, is now claiming. In the *Bailey* case, we announced the principles that the essentials of an easement by implication are (1) a separation of title; (2) a permanent use before separation impressed upon one part of the estate in favor of the other; and (3) which shall be necessary to the beneficial enjoyment of such part.

It is plain that there is no implied easement to the five foot strip across the lots of appellants which is entitled to be protected by a temporary injunction pending the outcome of this litigation. Cf. *State ex rel. Seattle Milk Shippers' Assn. v. Superior Court,* 130 Wash. 668, 228 Pac. 847.

■■ As to the second cause of action, since there has been no trial on the merits, respondent has a right to present it to the court under our statutes and our decisions in *State ex rel. Carlson v. Superior Court,* 107 Wash. 228, 181 Pac. 689, and *State ex rel. Huntoon v. Superior Court,* 145 Wash. 307, 260 Pac. 527.

The statutes providing for acquisition of private ways of necessity give no right to injunction. They

give the right to acquire the private way of necessity across the land of those obstructing ingress and egress from one landowner's property upon showing reasonable necessity therefor, not mere inconvenience, and full payment of the value thereof. *State ex rel. Carlson v. Superior Court, supra.* They are not entitled to an injunction during the pendency of the proceeding.

The order granting the temporary or preliminary injunction is reversed, and the cause remanded with instructions to proceed with a trial on the merits of the second cause of action of respondent.

Costs of appeal are granted appellants.

TOLMAN and GERAGHTY, JJ., concur.

BLAKE, J. (dissenting in part)—I cannot concur in this opinion, nor in its entire result. If I understand the fourth paragraph and the second sentence of the last paragraph on page 390, the law of this case is established to be that plaintiff can condemn for a private way of necessity notwithstanding the "necessity" arises from the manner in which he has developed his own property. At any rate, the language referred to is susceptible of that construction. It (the language) is not pertinent to the issue now presented. This appeal is solely confined to the order granting the temporary injunction—the assignments of error being:

"(1) Denying appellants' motion to dissolve the temporary restraining order.

"(2) Granting the temporary injunction."

In so far as the opinion holds that the temporary injunction should be dissolved, I concur in it.

BEALS, C. J. (concurring)—The only question before us is the ruling of the trial court granting a temporary injunction. I concur in the decision of the majority reversing that order.