[No. 9498. Department Two. July 15, 1911.]

C. SCHULENBARGER, *Appellant*, v. A. H. JOHNSTONE *et al.*, *Respondents.*[1]

EASEMENTS—CREATION—WAYS OF NECESSITY. An easement cannot be claimed as a private way of necessity over the lands of another unless there be a dominant and servient estate.

EASEMENTS — CREATION — PRESCRIPTION — PRIVATE WAYS. To acquire an easement for a private way by prescription, the travel must be over a uniform route, continuous, and adverse to the owner of the land, at a time when he could object; use of uninclosed lands, which were later fenced, leaving gates or bars as a neighborly accommodation, is not sufficient, showing merely a permissive use.

Appeal from a judgment of the superior court for Stevens county, Kellogg, J., entered May 27, 1910, in favor of the defendants, after a trial on the merits before the court without a jury, in an action for an injunction. Affirmed.

*Jesseph & Grinstead*, for appellant, contended, among other things, that an easement for a private way of necessity may be acquired by adverse possession or prescription. *Wasmund v. Harm*, 36 Wash. 170, 78 Pac. 777; *Van de Vanter v. Flaherty*, 37 Wash. 218, 79 Pac. 794; *Northern Counties Inv.*

[1]Reported in 116 Pac. 843.

*Trust v. Enyard,* 24 Wash. 366, 64 Pac. 516; *Seattle v. Smithers,* 37 Wash. 119, 79 Pac. 615. The use was not permissive; where continued for the prescriptive period, it is presumed to be adverse unless it is explained to be otherwise. 22 Am. & Eng. Ency. Law (2d ed.), pp. 1199, 1202; *Lechman v. Mills,* 46 Wash. 624, 91 Pac. 11, 13 L. R. A. (N. S.) 990. See, also, as to the doctrine of permissive use, *Bennett v. Biddle,* 140 Pa. 396, 21 Atl. 363; *Stewart v. White,* 128 Ala. 202, 30 South. 526; *French Piano & Organ Co. v. Forbes,* 129 Ala. 471, 29 South. 683, 87 Am. St. 71; *Conner v. Woodfill,* 126 Ind. 85, 25 N. E. 876, 22 Am. St. 568.

*Howard W. Stull* and *H. Wade Bailey,* for respondents.

CHADWICK, J.—Appellant brought this action seeking to restrain respondents from interfering with his use of a roadway now, and for some time past, used by appellant and his grantors. The roadway to which appellant asserts the right of user runs from his land across the lands of respondents through bars and gates, and connects with the public road on the south line of respondents' lands. Although settled upon about the year 1885, respondents' lands were not fenced until nine or ten years thereafter. The first settlers upon the lands now owned by the appellant traveled at will in going to or coming from the main road, and over, as the testimony shows, three or four different routes, depending upon the condition of the roads and the objective point. After the land was fenced, appellant and his grantors had gone through the fences, bars, or gates, as they have been from time to time maintained. There is evidence tending to show, also, that, although a way of no greater width than a wagon track has ever been used over the land, this has been shifted in very recent times to meet the convenience of the parties, and in one instance, at least, after express permission so to do obtained by appellant from respondents. There are no findings of fact brought to this court, but the position as-

sumed by appellant is made plain by reference to his complaint. He alleges:

"That the lands of the said plaintiff now are and for more than ten years last past have been land locked, and that there is no means of ingress or egress to and from said premises except by a roadway running diagonally across the easterly portion of the southeast quarter of the northwest quarter of said section, township and range, which said land is now owned and occupied by the said defendants, and that said roadway has been used openly, notoriously, continuously and adversely by the owners and the occupants of the land now owned by the plaintiff for a period of more than ten years prior to the date hereof, and the right to use said roadway over and across said land so owned by the said defendants has never been denied, but the same has been used to the knowledge of all persons, including the said defendants who owned or occupied the lands of the defendants for more than ten years, and has for more than said period of time been well defined, open and apparent to all persons and the owners and occupants of the land now owned by the plaintiff have worked said roadway, kept the same in repair and for such purpose have expended large sums of money, all with the knowledge and consent of the said defendants and the owners and occupants of said premises now owned by them, and that said roadway for more than said period of ten years so used, as aforesaid, was and now is of the width of thirty feet.

"That said defendants for some time last past and within the last year have obstructed said roadway by building fences into and upon the same, by erecting posts and placing wagons and farm machinery therein, and by stretching and maintaining ropes and other obstructions in, across and upon the same to such an extent as to prevent entirely the use of said roadway by the said plaintiff, and the said defendants are threatening to and will wholly and completely block, obstruct and fence up said roadway and deprive the said plaintiff of any and all means of ingress and egress to and from his said lands to the irreparable injury of the said plaintiff, unless enjoined by this court from so doing."

The lower court found that appellant had not sustained the

burden of his complaint, and entered a decree denying him all relief.

Appellant brings the case here, asserting that he is entitled to have his right of easement established by a decree of the court, upon two theories: (1) that the alleged roadway is a private road of necessity; and (2) that time has brought confirmation of his right under the doctrine of prescription. The first ground may be dismissed summarily. Whatever the necessities of the parties may be, a private way of necessity, as that term was defined at common law, does not apply to a way over the land of another, unless there be a dominant and servient estate. There can be no private way of necessity over the lands of a stranger. The right to use the way as a private way of necessity finds its support in the doctrine of estoppel, and is usually, if not universally, applied where a grantor, immediate or common, has sold land which would, unless connected in some way with the established highways of the country, be useless to the grantee. Hence, an intention to grant an easement is implied. The common law definition of the term has been adopted as the law in this state. This point is so well and thoroughly covered in *Healy Lumber Co. v. Morris*, 33 Wash. 490, 74 Pac. 681, 99 Am. St. 964, 63 L. R. A. 820, that we shall not pursue it further. See, also, *Malsch v. Waggoner*, 62 Wash. 470, 114 Pac. 446.

Whether the facts of the case bring it within the cases holding that an easement for a private way may be acquired by prescription, is the only question for us to decide. That an easement may be so acquired has been held by this court. *Wasmund v. Harm*, 36 Wash. 170, 78 Pac. 777; *Van De Vanter v. Flaherty*, 37 Wash. 218, 79 Pac. 794. In the *Harm* case the court said that, in order to gain a prescriptive right of way across the land of another by user, those asserting the right must show travel over a uniform route; and that the use must have been continuous, uninterrupted, and adverse to the owner of the land over which the way is claimed,

and with the knowledge of the owner, and during a time
when he was able in law to assert and enforce his rights.
Bearing in mind this test, we are convinced, by a careful read-
ing of the evidence, that the trial judge was correct in his
ruling.    We find nothing to sustain the contention of the
appellant that the use of the way was hostile or adverse, in
the sense that it was used in defiance of the respondents' title.
Neither is it made to appear that the way was ever so fixed
or defined as to raise a presumption of grant against the
owners of the land.    Nor has it ever been maintained by the
appellant as anything other than a way of convenience.

We understand the rule to be that a hostile or adverse
intent must mark the inception of the use upon which title
is made to depend, or, if the original use be permissive, a
changed intent on the part of the user, or the mere lapse of
time, although the term of the original permission is agreed
upon, will not initiate or ripen a title.    Such is the logic of
the case of *Scheller v. Pierce County,* 55 Wash. 298, 104
Pac. 277.    In that case there was a grant for a fixed period
of time, and although the right of the grantor had not been
reasserted, but a time equal to the period of limitations had
run after its expiration, during all of which time the public
had used the way, it was held that the use was still permissive,
the court adopting the text of Jones on Easements, §§ 282,
284, as an accurate statement of the law, and quoting from
*Pitzman v. Boyce,* 111 Mo. 387, 19 S. W. 1104, 33 Am. St.
536, as follows:

"If permissive in its inception, then such permissive char-
acter being stamped on the use at the outset, will continue of
the same nature, and no adverse user can arise until a dis-
tinct and positive assertion of a right hostile to the owner,
and brought home to him, can transform a subordinate and
friendly holding into one of an opposite nature, and exclusive
and independent in its character."

It can hardly be contended that it was ever the intent of the
law to hold that a private easement could be created over

the lands of another at a time when they were open and un-inclosed. It has never been so held, although the right be asserted by the public, unless under some controlling circumstances such as the expenditure of public moneys under the supervision of the road overseer, or some element of acquiescence on the part of the owner as instanced in the case of *State v. Horlacher*, 16 Wash. 325, 47 Pac. 748. It was held in *Watson v. County Com'rs*, 38 Wash. 662, 80 Pac. 201, where the court said:

"While we do not now hold that a right of way by prescription cannot be acquired over wild, unoccupied prairie lands, we do hold that, in order to give a prescriptive right, the use must at least be such as to convey to the absent owner reasonable notice that a claim is made in hostility to his title. It seems to us that any other rule amounts to a practical confiscation of private property for public purposes."

It will be admitted that the rule must of necessity be more liberal in favor of the public than in favor of an individual. And granting that a prescriptive right would not begin to run prior to the time that the land was fenced, we find nothing in the circumstances that the owner left gates and bars to indicate a surrender or acquiescence on the part of the landowner. On the contrary, it evidences a different intention. *Scheller v. Pierce County, supra*.

"If there are any acts which indicate the intention of the owner of the soil to preserve the control to himself, like the erection of a fence and gate, it cannot be said that the intention is established, and the road does not become a highway, however long it may have been used, even beyond the period of twenty years. Such permissive use, in the absence of any intention to dedicate, is but a mere license, which may be revoked at the pleasure of the owner." Monographic note (*Whitesides v. Green*, 13 Utah 341, 44 Pac. 1032), 57 Am. St. 758.

In the case at bar, we see no more than the usual accommodation between neighbors that marked the settlement of the public domain. Until roads are lawfully established, as

said by one of the witnesses, "they [meaning the public] must go somewhere," and by common consent the pioneer settling in front of another has usually been willing that his neighbor should continue his way over the land occupied by him. To charge the owner with acquiescense, or to credit the user with an adverse intent, would put a penalty upon generosity, and consequently, as is said in the *Scheller* case, *supra*, destroy all neighborhood accommodation;

"For if it were once understood that a man, by allowing his neighbor to pass through his farm without objection over the pass-way which he used himself, would thereby, after the lapse of twenty or thirty years, confer a right on him to require the pass-way to be kept open for his benefit and enjoyment, a prohibition against all such travel would immediately ensue." Jones, Easements, § 282.

Finding no error in the record, the judgment is affirmed.

DUNBAR, C. J., MORRIS, ELLIS, and CROW, JJ., concur.