[No. 15141.  Department Two.  May 1, 1919.]

JULIUS BRANDT, *Respondent,* v. JAMES R. ORROCK, *Appellant.*[1]

HIGHWAYS (9)—ESTABLISHMENT BY PRESCRIPTION—EVIDENCE—SUF-
FICIENCY OF ADVERSE USE.  Notwithstanding an enjoyment of a some-
what devious passageway for a long term of years over open un-
enclosed land, no prescriptive rights are acquired by the public or
those convenienced thereby until circumstances induced the owner
to cultivate or use it, unless it is shown that the public use was
adverse for the prescriptive period.

Appeal from a judgment of the superior court for
Spokane county, Blake, J., entered September 4, 1917,
upon findings in favor of the plaintiff, in an action for
an injunction, tried to the court.  Affirmed.

*Mark F. Mendenhall (Arthur H. Steake,* of counsel),
for appellant.

*Carl Ultes,* for respondent.

HOLCOMB, J.—Brandt, plaintiff below, brought this
action to restrain defendant from using a road across
Brandt's land; alleging in his complaint that defend-
ant, Orrock, was the tenant of land lying north and
east of Brandt's land, and that, prior to May 1, 1916,
Orrock used the land of plaintiff as a road for ingress
and egress to Orrock's land, and that Orrock had an-
other roadway equally as convenient to the public high-
way.  The evidence indicates that the other roadway
here referred to was what is known as the Stevens
creek road.  The complaint further alleges that, on May
1, 1916, Brandt's tenant, Hagemann, planted his land,
including the roadway in dispute, and put a fence
across the road; that, on June 5, 1917, Orrock drove
across plaintiff's land and threatened to continue to

[1]Reported in 181 Pac. 35.

cross the land; and further alleged irreparable injury, praying for damages and a temporary and permanent injunction. The lower court issued a temporary restraining order, and thereafter the respondent deeming the restraining order insufficient, a second temporary injunction was issued on June 14, 1917.

Appellant (defendant below) in his answer alleged that the road sought to be closed had been used as a road, and that the general public had been in notorious, adverse, and undisturbed possession and use of such road for more than ten years prior to the time plaintiff Brandt acquired title to his land; and it had been so used by the general public for more than twenty-five years; and up to within three years of the beginning of this action, was the only outlet for the local residents to the public school, post-office, etc., at Kiesling, and was their direct road to the city of Spokane, and always used as such, and that the road is a connecting link between roads both to the east and west of Brandt's land and had been used by himself and the public for more than twenty-five years; that large quantities of wood and timber had been hauled over the road from their lands and sold in Spokane; that Hagemann, the tenant of Brandt, had put in some crop and sought to prevent the defendant and his son from passing back and forth from their lands.

Appellant further alleged in his answer that, in the year 1917, one Coller and wife were living with Orrock and farming his land and Coller was also working his own land lying between three and four miles west of Orrock's land, near Willow Springs, and that the only direct and feasible road was the road in dispute across Brandt's land, and that to be barred from traveling across Brandt's land would compel them to go south down the mountain and then return almost due north along a hilly and steep ridge to get back upon the Big

Rock road, thus compelling a needless additional travel along a laborious, roundabout route of five miles in each road trip between the Orrock lands and the Coller land, to their great delay and damage.

By way of cross-complaint, there were further allegations that appellant and the public had for many years been accustomed to cross the Brandt land (though not then owned by Brandt) to reach various objectives, and that there is no other feasible or direct road for the general public traveling from Spokane to Moran Prairie or Kiesling and living along the Big Rock road to Orrock's land and lands to the east of him. Appellant's cross-complaint further alleged that this road is absolutely necessary for himself and the general public, and to close the same would work irreparable damage. The prayer of the cross-complaint was that respondent be perpetually enjoined from closing the road, and that the road be decreed a public highway.

At the trial, the evidence supported mainly the contention of long-user. Numerous witnesses appeared who testified to the unimpeded use of the road for longer or shorter periods of time, as their experience warranted. Respondent concedes substantially all of this testimony pertaining to the use of his land up to the time of its cultivation by Hagemann, claiming only that the route used was not one definite roadway, but was variable and deviating from one road to another according to the best ground therefor at different times. Essentially, the question that emerges for determination is one of law rather than one of fact.

Appellant urges: (1) That the public by long continued user of a way may acquire prescriptive rights in a road and thus establish it as a legal highway, citing *Smith v. Mitchell,* 21 Wash. 536, 58 Pac. 667,

75 Am. St. 858; *State v. Horlacher*, 16 Wash. 325, 47 Pac. 748; *State ex rel. Mountain Timber Co. v. Superior Court*, 77 Wash. 585, 137 Pac. 994; *Mason County v. McReavy*, 84 Wash. 9, 145 Pac. 993. (2) When a highway has been accepted, either by the action of public officers or by prescription through user for a period of seven years, it will require an equal period of seven years' continuous abandonment to oust the public of its rights in the road, citing *Seattle v. Smithers*, 37 Wash. 119, 79 Pac. 615; *Wasmund v. Harm*, 36 Wash. 170, 78 Pac. 777; *McWhorter v. Forney Brothers & Co.*, 69 Wash. 414, 125 Pac. 164. (3) Continued adverse user for ten years or more raises a presumption of grant and owner closing way has burden of proof. (4) Open and adverse user through gates gives prescriptive rights in a road. (5) Owner cannot shut old way and give new way and put gates in new way. The burden of proof is on the plaintiff asserting that the use was permissive.

Against this, the respondent contends that the instant case falls within that class of cases in which a private easement cannot be created over the lands of another at the time when they are open and uninclosed, the use of which was permitted prior to the cultivation thereof. Nor does the prescriptive period begin to run until the land is cultivated and the use thereof denied. He also contends that this court has held, in effect, in the cases of *Schulenbarger v. Johnstone*, 64 Wash. 202, 116 Pac. 843, 35 L. R. A. (N. S.) 991, and *Watson v. County Commissioners of Adams County*, 38 Wash. 662, 80 Pac. 201, that the rule is that, to create a highway by prescription, the use or possession must be open, notorious, continuous and *adverse*. The public, however, cannot acquire a public highway over such lands where it appears the use

was permissive during the period that the land was vacant and unoccupied, notwithstanding the fact that a period of twenty years had elapsed, nor does the prescriptive right begin to run until the owner does some act, or suffers some act to be done, by way of asserting his ownership over the land thus used.

The solution of two propositions in the affirmative or negative would be determinative of this controversy; first, Did the prescriptive period begin to run until the land was cultivated and the use thereof denied; and, second, did it devolve upon the defendant to prove that the highway had been used openly, notoriously, continuously and *adversely* for the prescriptive period? If the prescriptive period did begin to run long before the time of the cultivation of the land, then, on respondent's own concession, the public must be held to have acquired that right.

Upon the main question presented as to whether prescriptive title in the public was established, appellants cite three Washington cases, above noted. We will briefly examine them.

The first, *State v. Horlacher, supra,* was an action by the state for obstructing a public highway with a fence. This case establishes certain rules of evidence in a prosecution for obstructing a public highway as to the fact of the establishment of such highway; only doubtfully and inferentially could any rule of prescription be arrived at from this decision, the declaration of such rule not being the object of the decision.

The second, *Smith v. Mitchell, supra,* establishes the rule that, where the only means of ingress to, and egress from, the lands of a private person in order to reach a market for the products of his farm and nursery is a public highway, the obstruction of such

highway is of such special injury to him as to author-
ize his maintaining an action to enjoin it as a public
nuisance, under Bal. Code, § 3093.

The third case, *State ex rel. Mountain Timber Co.
v. Superior Court, supra,* involved simply the consti-
tutionality of § 5857-1, 3 Rem. & Bal. Code, Judge
Gose, the writer of the opinion, observing: "The
constitutionality of the act is the only question pre-
sented in the briefs or argued at the bar."

We do not regard any of these cases as other than
incidentally relevant to the controversy. On the other
hand, this court has clearly and comprehensively
stated the rule of prescription as it applies to facts
similar to those presented by the instant case.

In *Watson v. County Commissioners of Adams
County, supra,* this court stated:

"The rule of law governing prescriptive rights of
way over such lands is thus stated by the supreme
court of Illinois in *O'Connell v. Chicago etc. R. Co.,*
184 Ill. 308, 56 N. E. 355: 'The land in question, being
uninclosed prairie land, the rule applies, which has
been held by this court in a number of cases that,
where land is vacant and unoccupied and remains free
to public use and travel until circumstances induce
the owner to enclose it, the mere travel across it, with-
out objection from the owners does not enable the
public to acquire a public road or highway over the
same. Such use by the public of vacant and unoccu-
pied land by travel over it, even after the period of
twenty years, is regarded merely as a permissive use.
Such user continues to be regarded as being by per-
mission of the owner until he does some act, or suf-
fers some act to be done, by way of his asserting his
ownership over the land thus used. In other words,
there must be something more than mere travel over
uninclosed lands by the public, in order to establish
a public highway over the same by prescription."

*Schulenbarger v. Johnstone, supra,* amplifies this rule. This case presents a striking similarity to the instant case, although a subordinate question was one of a private way of necessity which the court dismisses as not properly at issue. After stating the undoubted rule that a right of way may be acquired by prescription in this state, the court observes:

"We understand the rule to be that a hostile or adverse intent must mark the inception of the use upon which title is made to depend, or, if the original use be permissive, a changed intent on the part of the user, or the mere lapse of time, although the term of the original permission is agreed upon, will not initiate or ripen a title. . . . It can hardly be contended that it was ever the intent of the law to hold that a private easement could be created over the lands of another at a time when they were open and uninclosed. It has never been so held, although the right be asserted by the public . . . It was held in *Watson v. County Com'rs, supra,* . . . 'if there are any acts which indicate the intention of the owner of the soil to preserve the control to himself, like the erection of a fence or gate, it cannot be said that the intention is established, and the road does not become a highway, however long it may have been used, even beyond the period of twenty years. Such permissive use, in the absence of any intention to dedicate, is but a mere license, which may be revoked at the pleasure of the owner.' Monographic note (*Whitesides v. Green,* 13 Utah 341, 44 Pac. 1032), 57 Am. St. 758. In the case at bar, we see no more than the usual accommodation between neighbors that marked the settlement of the public domain. . . . To charge the owner with acquiescence, or to credit the user with an adverse intent, would put a penalty on generosity, . . ."

The two foregoing cases, with the cases therein cited and harmonized, we regard as definitive of the rights of the parties in this matter, and that, although

there was the enjoyment of a somewhat devious passageway for a long period of years over the open, uninclosed land of the respondent, no prescriptive rights were acquired by the appellants or the public generally which would estop the assertion of respondent's private ownership in the manner in which this case indicates it was made. Holding, as we must, that the prescriptive right did not begin to run till the act of Brandt and his tenant here complained of, it devolved upon appellants to prove that the highway was used during the prescriptive period openly, notoriously, continuously and *adversely.* This, manifestly, they could not do, for the alleged prescriptive period would have begun to run in 1916, when Brandt asserted his right to obstruct the highway.

Judgment affirmed.

CHADWICK, C. J., MOUNT, PARKER, and FULLERTON, JJ., concur.