51 P.3d 793 (2002)
147 Wash.2d 78
The BOEING COMPANY, Appellant,
v.
Carl HEIDY; William McGraw; The Department of Labor and Industries, Respondents.
No. 71694-3.
Supreme Court of Washington, En Banc.
Argued March 21, 2002.
Decided August 8, 2002.
*795 Craig, Jessup & Stratton, Gilbert Stratton, Bernadette Pratt, Seattle, for Appellant.
Putnam & Lieb, Frederick Lieb, Olympia, Christine Gregoire, Attorney General, Mary Wilson, Anastasia Sandstrom, Assistant Attorneys General, for Respondents.
William Hochberg, Edmonds, Amicus Curiae on Behalf of Washington State Labor Council.
Michael Pontarolo, Bryan Harnetiaux, Debra Stephens, Spokane, Amicus Curiae on Behalf of Washington State Trial Lawyers Association.
Craig Staples, Vancouver, Amicus Curiae on Behalf of Washington Self-Insurers Association.
*794 JOHNSON, J.
The key issue in this case, reduced to its essence, is whether an employer can reduce a worker's permanent partial disability award for work-related hearing loss because people of that worker's age generally suffer from age-related hearing loss. The Department of Labor and Industries, the Board of Industrial Insurance Appeals, and two superior courts said no. We affirm.

FACTS
In June 1995, Carl Heidy (Heidy) filed a claim for benefits with the Department of Labor and Industries (Department) alleging he suffered from occupational noise-related hearing loss (NRHL). The Department ordered Heidy's former self-insured employer (SIE), The Boeing Company (Boeing), to pay Heidy a permanent partial disability (PPD) award of 31.56 percent for his hearing loss based on the schedule in effect when he retired. Boeing appealed to the Board of *796 Industrial Insurance Appeals (Board). William McGraw (McGraw) filed a similar claim for benefits in November 1995. The Department ordered McGraw's former employer, Boeing, to pay McGraw a PPD of 23.75 percent for his hearing loss. Boeing appealed to the Board.
Heidy and McGraw's claims were consolidated with seven other similar claims before the Board for the purpose of taking testimony. The nine claims shared certain facts: each claimant suffered NRHL and age-related hearing loss (ARHL) (presbycusis); the Department ordered the respective SIE's to pay a PPD award for 100 percent of the workers' hearing loss; and the Department calculated the awards using the benefit schedule in effect on the workers' last day of work. The SIE's argued in favor of segregating ARHL from NRHL by using a median-based allocation method developed by Dr. Robert Dobie.
The Board held the present methods of differentiating between ARHL and NRHL were not scientifically reliable. The Board went on to state that, as a matter of law, "Washington ... does not permit a reduction in a worker's permanent partial disability benefits to account for aging's contribution to hearing loss." Heidy Certified Appeal Board R. (CABR) Clerk's Papers (CP) at 29.[1]
The Board also rejected the Department's unwritten policy of categorically rejecting audiograms conducted more than one year before a worker's retirement. However, it held that "where the evidence shows a worker continued to be placed in a noisy work environment after the date of a given audiogram... the burden appropriately shifts to the employer to show by persuasive evidence that subsequent workplace noise was not injurious to the worker's hearing." Heidy CABR CP at 14.
In Heidy's case, the Board rejected an audiogram taken almost four and one-half years after Heidy's retirement in favor of an audiogram taken almost one and one-half years before Heidy retired. The Board rejected the postretirement audiogram because it showed conductive hearing loss (which is different from ARHL), whereas the preretirement audiograms showed NRHL. In McGraw's case, the Board rejected an audiogram taken 13 months before retirement in favor of an audiogram taken approximately eight years after retirement. It did so because McGraw was exposed to 13 months of workplace noise after the preretirement audiogram, and the additional hearing loss was not inconsistent with NRHL. The Board concluded the incremental increase in hearing loss between the preretirement and postretirement audiograms (19 percent binaural impairment versus 23.75 percent binaural impairment) was best accounted for by the 13 months of workplace exposure to noise.
Finally, the Board held hearing loss becomes partially disabling when the average loss exceeds 25 decibels across the frequencies specified in the American Medical Association Guides. It also acknowledged that unlike most other occupational diseases, a worker may be partially disabled by NRHL without knowing of his or her condition. The Board found this anomaly unacceptable and held, "to ensure that the `partially disabling' trigger to start the schedule of benefits for occupational diseases be applied fairly to all workers, ... there be a showing that the worker also has knowledge of limitations in his or her hearing." Heidy CABR CP at 20.
This knowledge requirement had no effect in McGraw's case. In Heidy's case, the Board declined to apply the schedule of benefits in effect in 1975, when an audiogram first showed Heidy was partially disabled. Instead, it applied the schedule of benefits in effect on July 12, 1978, when Heidy was first fitted with hearing aids. The schedule of benefits was identical, regardless of which date applied. The cases were deconsolidated and Boeing appealed each of the decisions to the superior court with jurisdiction (King County in Heidy's case; Pierce County in McGraw's case). The Department also appealed the decision in McGraw's case.
*797 The superior court in Heidy's case held that segregating ARHL from NRHL in a PPD award is forbidden following the reasoning of Weyerhaeuser Co. v. Tri, 117 Wash.2d 128, 814 P.2d 629 (1991). Having forbidden segregation as a matter of law, the superior court did not address whether segregation was medically possible. The court reversed the Board's burden-shifting rule and knowledge requirement. It also awarded attorney fees to Heidy's counsel.
The superior court in McGraw's case adopted every conclusion of law set forth by the Board, except that involving when McGraw knew of his partial disability. The court characterized that issue as moot. The court also awarded attorney fees to McGraw's counsel, the same lawyer who represented Heidy, and applied a 1.25 multiplier to the lodestar amount. Boeing appealed the segregation, burden-shifting and knowledge issues and the award of attorney fees and the application of a 1.25 multiplier.[2]
Both Division One and Division Two of the Court of Appeals certified the respective appeals to this Court on the grounds they involved "a fundamental and urgent issue of broad public import which requires prompt and ultimate determination." RAP 4.2(4). We accepted certification of both cases and reconsolidated them for our review.

ANALYSIS
The Board held Washington law forbids segregation as a matter of law. While the superior court in McGraw's case simply adopted the Board's conclusion, the superior court in Heidy's case held segregation was forbidden as a matter of law under Weyerhaeuser Co. v. Tri, 117 Wash.2d 128, 814 P.2d 629. In Tri, we addressed the issue of apportioning worker's compensation risk between successive employers or insurers. This case involves the different issue of segregating an occupational disease from a nonoccupational disease. Tri does not control the resolution of this case.
In support of their argument for segregating ARHL from NRHL, Boeing relies on the testimony of Dr. Robert Dobie, who developed a statistical methodology to segregate ARHL from NRHL. Although Dr. Dobie advocates using several methods to allocate hearing loss to noise exposure or age, the only method at issue in this case is his median-based allocation method. The median-based allocation method uses epidemiological data[3] to segregate ARHL from NRHL. Dr. Dobie explained it in simple terms:
[Y]ou basically look at the amount of [hearing] loss to be expected for that individual, given his age, and look at the amount of loss to be expected from what you know about the noise exposure [based on Databases A and B]. [Y]ou then say, in my judgment, the fairest allocation is the one that is in proportion to those two; that if a group of people working in 90 dBA for 40 years ended up having three quarters of their loss at age 60 being age-related and a quarter of it being noise induced, that that's a proper division of responsibility for the individual who's 60 years old and worked for 40 years in that noise exposure.
Heidy CABR Tr. 53-54 (Test.Dobie).
Dr. Dobie's testimony summarizes the flaw with the median-based allocation method; it does not assist a doctor in determining the actual extent to which an individual suffers from ARHL. At best, it allows a doctor to compare an individual's age and hearing loss percentage to a smoothed-data[4] chart based on information not intended to be used to assess individuals. The doctor can then "norm" the individual's actual hearing loss percentage so that it reflects the median amount of ARHL expected by a person of that age. However, under the Industrial Insurance Act (Act), the amount of *798 compensation for a particular injury focuses specifically on the injured individual and the extent of his or her injuries. Statistical studies showing tendencies within given age groups do not help triers of fact determine the actual extent of workers' individual work-related diseases.
Also, Act is to be "liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010. All doubts about the meaning of the Act must be resolved in favor of workers. Clauson v. Dep't of Labor & Indus., 130 Wash.2d 580, 584, 925 P.2d 624 (1996). When faced with a circumstance where either workers or employers will bear the burden of an imperfect science, the statute directs us to construe the Act in favor of workers. RCW 51.12.010. Because of its generalized nature, Boeing's median-based allocation method is inconsistent with the nature of workers' compensation in Washington, which focuses on the specific and individual employment-related injuries and diseases of workers.
Boeing has not cited, nor can we find, statutory authority to support the proposition that a disabled worker's PPD award can be reduced based simply on the age of the worker. While employers are not required to compensate workers' nonwork-related diseases and injuries, the fact a worker is a certain age is irrelevant to establishing that any portion of his or her injury or disease is not work-related. If it is determined that a worker's disability is work-related and the employer can establish, on an individualized basis, that the full amount or a portion of a worker's disability is not work-related, the employer need not compensate that worker for the portion of the worker's disease or injury that is not work-related. However, the statutes do not allow an employer to establish that a worker's disease or injury is not work-related simply by arguing the worker is of a certain age and then showing that people of that age generally suffer from the same or a similar disease. We find nothing in the statutes that allows for a reduction based on age in an injured worker's claim. Absent statutory authority to the contrary, we hold that a worker's age is irrelevant to establishing the existence and extent of a worker's disability, and the median-based allocation method cannot be used to refute the existence or extent of an individual's disability.
Burden shifting
The next question is whether the superior court in McGraw's case erred by requiring employers to establish the validity of an audiogram if a preretirement audiogram is used to measure hearing loss. The Department urges us to reach beyond the facts of this case and forbid the use of industrial (as opposed to clinical) audiograms to establish a worker's hearing loss.
The audiogram results used in these cases are evidence. Thus, this issue concerns the weight and credibility accorded to evidence. An audiogram conducted one year before a worker's retirement might be less credible than an audiogram conducted one year after a worker's retirement. It might not be. It might be more credible than an audiogram conducted 10 years after retirement. It might not be. These are fact-based issues that go to the weight and credibility of evidence.
Appellate courts do not weigh evidence or assess credibility. It is the sole province of the trier of fact to pass on the weight and credibility of evidence. Davis v. Dep't of Labor & Indus., 94 Wash.2d 119, 124, 615 P.2d 1279 (1980) (questions of credibility are for trier of fact and are not overturned on appeal); State v. Walton, 64 Wash.App. 410, 415-16, 824 P.2d 533 (1992) (trier of fact's function is to weigh persuasiveness of evidence). The superior court is an appellate court in appeals from the Board. Shufeldt v. Dep't of Labor & Indus., 57 Wash.2d 758, 359 P.2d 495 (1961). As such, it is bound by the same constraints as apply to all appellate courts. The superior court in McGraw's case erred by requiring employers to establish the validity of an audiogram if a preretirement audiogram is used to measure hearing loss. It was improper for the superior court to impinge on the role of the trier of fact by shifting the burden of proof to employers *799 to show no further injurious noise exposure if a preretirement audiogram is used. Whether a preretirement audiogram credibly measures a worker's hearing loss is for the trier of fact, not an appellate court, to determine, and there has been no showing that preretirement audiograms are so unreliable as to warrant a legal presumption against their validity. As to the Department's position, we decline to make the same mistake by creating another blanket evidentiary rule. We have always relied on triers of fact to resolve these issues, and we will continue to do so. The superior court is reversed on this point, and the parties are free to litigate the validity of the audiograms in the same manner they would litigate any other issue of fact or credibility.
Knowledge requirement
The last substantive issue in this case is whether a worker must know he or she is partially disabled before the applicable schedule of benefits can be determined. The Board held, "to ensure that the `partially disabling' trigger to start the schedule of benefits for occupational diseases be applied fairly to all workers, ... there must be a showing that the worker knows of limitations in his or her hearing." Heidy CABR CP at 20. The superior court in Heidy's case rejected this construction, and in McGraw's case, the court declined to address the issue, believing it to be moot.
RCW 51.32.180(b) does not require such knowledge: "[T]he rate of compensation for occupational diseases shall be established as of the date the disease requires medical treatment or becomes totally or partially disabling, whichever occurs first, and without regard to the date of the contraction of the disease or the date of filing the claim." The Board expressed disbelief that the term "partially disabling" could "treat workers differently based solely on the nature of the medical condition they may have." Heidy CABR CP at 20. Nonetheless, that is exactly what the term "partially disabling" does when applied to workers afflicted by a progressive condition with easy to miss symptoms. RCW 51.32.180(b) is cleara worker's knowledge of his or her disabling condition does not affect when the rate of compensation is established. Rather, the rate of compensation is established when "the disease requires medical treatment or becomes totally or partially disabling, whichever occurs first." RCW 51.32.080(b); Dep't of Labor & Indus. v. Landon, 117 Wash.2d 122, 124, 814 P.2d 626 (1991). Apart from the unique circumstances posed by hearing loss, as a general proposition the date a worker is partially disabled is usually the same date a worker knows of his or her disabling disease. We hold a worker's knowledge of his or her disabling condition does not affect when the rate of compensation under the Act is established.
Attorney fees
Finally, Boeing raises three challenges to the award of attorney fees in Heidy's case and further argues it is entitled to statutory attorney fees under RCW 4.84.010 as a prevailing party.
Boeing first argues Heidy's right to relief was not sustained on appeal. Boeing acknowledges the absence of controlling law, but argues its case is analogous to Brand v. Department of Labor & Industries, 139 Wash.2d 659, 989 P.2d 1111 (1999). In Brand, we held a claimant appellant need not prevail on all issues to be entitled to attorney fees. Brand, 139 Wash.2d at 669-70, 989 P.2d 1111. Boeing argues it should not have to prevail on all issues in order not to be responsible for attorney fees. It goes on to argue that since it prevailed on two out of three issues on appeal, it is itself entitled to statutory attorney fees. Boeing also argues in favor of segregating Heidy's successful claims from unsuccessful claims and awarding attorney fees only for the successful claims.
The plain language of RCW 51.52.130 answers Boeing's first contention: "[I]n cases where a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained, a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court." Though he lost on two out of three issues, Heidy's right to relief was sustained throughout this *800 litigation.[5] RCW 51.52.130 is unambiguous, and the statute requires Boeing to pay Heidy's reasonable attorney fees.
As to Boeing's analogy to Brand, we have already said that "[g]iven the unitary nature of claims brought under the Industrial Insurance Act, ... workers' compensation claims are not unrelated, and should not be segregated in terms of successful and unsuccessful claims for the purpose of calculating attorney fees under RCW 51.52.130." Brand, 139 Wash.2d at 673, 989 P.2d 1111.[6] Furthermore, despite having prevailed on two out of the three issues it appealed to superior court, Boeing did not prevail on the central issue in this casethe only issue it appealed to the Boardwhether it can use a median-based allocation method to reduce a worker's hearing loss PPD award to compensate for ARHL. Boeing was not a prevailing party within the meaning of RCW 4.84.010.
Finally, Boeing argues Heidy's attorney fees were unreasonable. We review the reasonableness of attorney fees under the abuse of discretion standard. Brand, 139 Wash.2d at 665, 989 P.2d 1111. A trial court abuses its discretion only when the exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons. Brand, 139 Wash.2d at 665, 989 P.2d 1111. The trial court awarded Heidy $23,440 in attorney fees. Heidy's attorney did not begin representing Heidy until Boeing appealed the Board's decision. He did, however, represent one of the claimants in the consolidated cases before the Board. Boeing argues the attorney fees should be reduced in Heidy's case because Heidy's attorney was familiar with the issues on appeal. Whether this is so or not is a matter clearly within the trial court's discretion. Boeing raised this same argument before the trial court, which issued a memorandum opinion regarding attorney fees. The trial court declined to apply a multiplier to the adjusted lodestar amount because Heidy's attorney had already been involved in similar cases. This is a matter within the trial court's discretion, and the trial court's award of attorney fees was not manifestly unreasonable.
WE CONCUR: ALEXANDER, C.J., SMITH, SANDERS, MADSEN, IRELAND, BRIDGE, CHAMBERS, OWENS, JJ.
NOTES
[1] Unless otherwise noted, the Certified Appeals Board Record in Heidy's case mirrors that in McGraw's case.
[2] Boeing later moved to withdraw its assignments of error pertaining to attorney fees in McGraw's case. That motion passed to the merits and is hereby granted.
[3] Epidemiology is the study of populations to determine the frequency and distribution of disease.
[4] Dr. Nayak Polissar criticized Dobie's method for its reliance on "smoothed" data, in which the data highs and lows are discarded in favor of the median. Heidy CABR Tr. 134 (Test. Polissar 9-20-96).
[5] There is a difference between a worker's right to relief and a worker's theory about why he or she has a right to relief. The worker's theory need not be sustainedonly the right to relief.
[6] This statement succinctly answers Boeing's contention that Heidy should not receive attorney fees for issues on which the employer prevailed.