

**FILED**
**FEBRUARY 8, 2022**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RICHARD C. JOHNSON and DIANNE H. JOHNSON, husband and wife, | ) ) ) | No. 37784-9-III |
| Respondents, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| MORGAN H. DAVIS, an individual, | ) ) | |
| Appellant. | ) | |

SIDDOWAY, A.C.J. — Morgan Davis appeals the trial court adjudication that property he owns in Okanogan County is subject to an easement in favor of his neighbors, Richard and Dianne Johnson. Mr. Davis does not assign error to the trial court's findings of fact, but argues that the trial court misinterpreted the intent of a declaration of easements filed by his predecessor in interest in 1978 and erred by placing the access easement for the Johnsons across his property. We affirm.

FACTS AND PROCEDURAL BACKGROUND

The following facts are either allegations of the complaint that were not denied or are drawn from the trial court's findings of fact to which error is not assigned.

Richard and Dianne Johnson were, at the time they commenced the action below, residents of California. In 2006, they acquired real property in Okanogan County through a statutory warranty deed dated December 7, 2006, which was recorded on December 14, 2006.

Morgan Davis owns a neighboring property in Okanogan County that he acquired in 1991 through a statutory warranty deed dated September 18, 1981, which was recorded on December 10, 1991.

Both the Johnsons' property and Mr. Davis's property are subject to a declaration of covenants, conditions and easements recorded with the Okanogan County auditor on July 17, 1978 (the 1978 Declaration).

Mr. Johnson crossed the Davis property only infrequently after purchasing his own property. Initially, Mr. Davis allowed Mr. Johnson to cross his property in order to reach the Johnson property. In 2009, Mr. Johnson used his GMC truck and accessed his property by opening two gates on the Davis property and traveling over the Davis property.

In 2015, Mr. Davis put locks on the gates at the location where Mr. Johnson had previously crossed his property. He also notified Mr. Johnson that the Johnsons were no longer permitted to cross his property to access theirs.

The Johnsons thereafter brought the action below, seeking an order quieting title to a 30 foot easement for right-of-way for ingress, egress and utilities across Mr. Davis's property, on a route depicted by their complaint. They also sought to permanently enjoin Mr. Davis and his successors from interfering with the easement's enjoyment and use. They relied on the 1978 Declaration.

The 1978 Declaration was executed and recorded by Barnett/Turlis, Inc., which was acquiring a large tract of land from a number of property owners with a view to selling it for residential and recreational use. It provides in relevant part:

> The purpose of this Declaration is to establish certain covenants and easements to promote the orderly use and enjoyment of all the premises, to protect and increase the property value thereof, and otherwise to generally benefit all owners of the premises. . . .
>
> . . . .
>
> II. <u>REASONABLE</u> <u>ACCESS</u>.
>
> A.     <u>Purpose</u>. There are presently roads on the premises described in Exhibit 1, attached, which provide reasonable access to said premises in their undivided and undeveloped state. *The purpose of this declaration is to insure that upon division and development of said premises*[,] *reasonable access will be assured to parcels into which said premises are divided.* There is presently no reasonable means of determining where new roads must be located to provide reasonable access to said parcels. *It is*, however, *the intent of these provisions that the owners of such parcels shall have necessary easements for ingress and egress and utilities over adjoining parcels for such reasonable access wherever it becomes necessary.*

B. Easements for Ingress and Egress.

(1)    Existing Roads.  The existing roads located on the premises described in Exhibit 1 are hereby reserved for the common use of the owners of all portions of said premises as necessary for such owner's ingress and egress and utilities to their respective parcels. . . .

(2)    New Roads.  *Any subsequent divisions of the premises described in Exhibit 1 shall include, as necessary, easements for ingress and egress and utilities to adjoining portions of said premises in order to provide reasonable access thereto the owners thereof.*

. . . .

V. DURATION AND EFFECT.

This declaration of covenants, conditions and easements shall run with the premises described in Exhibit l and shall be binding upon all subsequent purchasers of portions thereof.

Ex. 1, at 1-3.

The case proceeded to a one-day bench trial.  The Johnsons appeared through counsel and Mr. Davis appeared pro se.  In a letter decision issued following the trial, the court concluded that the Johnsons were entitled to judgment enforcing "an easement for right of way for ingress, egress, and utilities of thirty (30) feet in width generally running east to west, south of and paralleling Bonaparte Creek."  Clerk's Papers (CP) at 342.  It located the easement in the same area on the Davis property that Mr. Davis had allowed Mr. Johnson to use as access prior to 2015.  It permanently enjoined Mr. Davis and his successors from interfering with the Johnsons' and their successors' use and enjoyment of the easement.

4

The findings, conclusions, and judgment entered by the court attached this depiction of the easement's location:



CP at 369.

Mr. Davis filed motions thereafter that the trial court treated as requesting reconsideration. After hearing argument, the court granted reconsideration in part, limiting the width of the easement to "no more than fifteen (15 feet)" and ordering the Johnsons and their successors to close the perimeter gates when using the easement for ingress and egress. Mr. Davis appeals.

ANALYSIS

An appeal is not a second chance for an appellant to persuade the decision maker of the appellant's view of the facts. In reviewing the outcome of a bench trial, we review whether any factual findings by the trial court that are challenged are supported by substantial evidence, and whether the factual findings support the trial court's conclusions of law. *Hurlbut v. Crines*, 14 Wn. App. 2d 660, 667, 473 P.3d 263 (2020) (citing *Nejin v. City of Seattle*, 40 Wn. App. 414, 418-19, 698 P.2d 615 (1985)). We defer to the trial court's assessment of credibility and its weighing of the evidence. *Buck Mountain Owners' Ass'n v. Prestwich*, 174 Wn. App. 702, 713, 308 P.3d 644 (2013) (citing *Boeing Co. v. Heidy*, 147 Wn.2d 78, 87, 51 P.3d 793 (2002)). Accordingly, in reviewing the record for substantial evidence, we view the evidence in the light most favorable to the party who prevailed. *Id.* In this case, then, we presume that on any factual issue on which the parties' evidence was conflicting, the trial court found the Johnsons' evidence to be credible and entitled to the most weight.

As the Johnsons point out, Mr. Davis's opening brief does not assign error to any of the trial court's factual findings, so we treat them as verities on appeal. *Id.* at 714 (citing *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992)). Although Mr. Davis opened his reply brief by asking us to forgive any procedural error on his part in the interest of reaching the merits, citing RAP 1.2(a), he still does not identify any finding of fact that he argues is contrary to the evidence.

Mr. Davis's quarrel appears to be with the trial court's conclusions of law. Although he organizes his opening brief around four assignments of error, the alleged errors are difficult to discern, principally because Mr. Davis confuses the law that applies to the express, appurtenant easement in this case with different law that applies to easements that arise by means other than through an express grant.

We can discern that Mr. Davis contends the trial court erred when it concluded that the 1978 Declaration intended to create an easement in the present circumstances. Specifically, he alleges that the declaration requires that an easement be "absolutely necessary" and the trial court should have found the easement unnecessary in this case. He also challenges the trial court's decision to place the easement on his property. We address the issues in that order.

I.   THE EASEMENT SOUGHT BY THE JOHNSONS WAS "NECESSARY" WITHIN THE MEANING OF THE 1978 DECLARATION

An easement is a property right separate from ownership that allows the use of another's land without compensation. *Hanna v. Margitan*, 193 Wn. App. 596, 606, 373 P.3d 300 (2016) (quoting *M.K.K.I., Inc. v. Krueger*, 135 Wn. App. 647, 654, 145 P.3d 411 (2006)). An easement appurtenant is an irrevocable interest in land that has been obtained for duly given consideration. *Id.* (quoting *Kirk v. Tomulty*, 66 Wn. App. 231, 238-39, 831 P.2d 792 (1992)). Easements appurtenant become part of the realty that they benefit. Unless limited by the terms of creation or transfer, appurtenant easements follow

possession of the dominant estate through successive transfers. *Id.* (quoting *Green v. Lupo*, 32 Wn. App. 318, 323, 647 P.2d 51 (1982)). Mr. Davis does not dispute that the 1978 Declaration created express easements and applies to both his and the Johnsons' land.

The interpretation of an easement is a mixed question of law and fact. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003) (citing *Veach v. Culp*, 92 Wn.2d 570, 573, 599 P.2d 526 (1979)). What the original parties intended is a question of fact and the legal consequence of that intent is a question of law. *Id.* (citing *Veach*, 92 Wn.2d at 573). The intent of the original parties to an easement is determined from the deed as a whole. *Id.* (citing *Zobrist v. Culp*, 95 Wn.2d 556, 560, 627 P.2d 1308 (1981)). If the plain language is unambiguous, extrinsic evidence will not be considered. *Id.* (citing *City of Seattle v. Nazarenus*, 60 Wn.2d 657, 665, 374 P.2d 1014 (1962)).

An easement defined in general terms, without a definite location or description, is called a floating easement. *Sunnyside Valley*, 149 Wn.2d at 880. A floating easement becomes fixed to a location after construction and cannot thereafter be changed. The width of a floating easement is bounded by the doctrine of reasonable enjoyment and is restricted to "that which is reasonably necessary and convenient to effectuate the original purpose for granting the easement." *Id.*

The following language from the 1978 Declaration granted the easement that the Johnsons sought to enforce:

New Roads. Any subsequent divisions of the premises . . . shall include, as necessary, easements for ingress and egress and utilities to adjoining portions of the premises in order to provide reasonable access thereto the owners thereof.

Ex. 1, at 2. "Reasonable access" is defined by the 1978 Declaration as "access over terrain on which a usable forest service type road could be constructed which could be easily negotiated by a standard four wheel drive vehicle." *Id.* at 1.

Mr. Davis's principal argument is that the easement must be "absolutely necessary" as he understands that term to be used in a comment by law student Harold J. Hunsaker entitled *The Implied Easement and Way of Necessity in Washington*, 26 WASH. L. REV. 125 (1951). The law review comment discusses law having no application to this case. The concept of "absolute necessity" discussed by Hunsaker is not necessity of a higher degree; thus construed, the term would be redundant, since "necessary" is itself defined as meaning, e.g., "**1 :** absolutely needed **:** REQUIRED // Food is *necessary* for life." MERRIAM-WEBSTER ONLINE DICTIONARY (https://www.merriam-webster.com/ dictionary/necessary).

Hunsaker uses "absolute necessity," instead, in describing the position of Washington courts that one could have a *common law* right of necessity only if it could be based on an implied grant, or estoppel, arising out of a prior unity of title, whereas a

9

*statutory* right of necessity could be had over the land of a stranger. *See id.* at 130-33.[1]

As observed at the outset by the Hunsaker comment, implied easements, including ways

of necessity, "arise[ ] *by inference of law* when certain facts concerning the conveyance

of land are found by the court." *Id.* at 125 (emphasis added). They are unlike express

easements, such as the 1978 Declaration, that are intentionally and expressly created by a

landowner with the power to create them and to bind successors. Unsurprisingly, when a

court imposes an easement that was never expressly granted by the owner or his

predecessors, more stringent proofs apply. With an express easement, by contrast, we are

concerned only with discerning and enforcing the intent of the easement grantor.

Turning to the plain language of the 1978 Declaration, the express grant is "as

necessary, easements for ingress and egress and utilities to adjoining portions of [the]

---

[1] Hunsaker opines that "[i]f *dicta* may be used as a basis of prediction, absolute necessity is required for the common law way of necessity in Washington," citing *Schulenbarger v. Johnstone*, 64 Wash. 202, 116 Pac. 843 (1911), *Healy Lumber Co. v. Morris*, 33 Wash. 490, 74 Pac. 681 (1903), and *Long v. Billings*, 7 Wash. 267, 34 Pac. 936 (1893)). 26 WASH. L. REV. at 133 & n.39. As relevant to the point being made by Hunsaker, *Schulenbarger* summarily dismissed the appellant's claim to an easement for a private road of necessity, where "a private way of necessity, as that term was defined at common law, does not apply to a way over the land of another, unless there be a dominant and servient estate." 64 Wash. at 205. *Healy Lumber* states, "[A] way of necessity can only be raised out of land granted or reserved by the grantor, but not out of the land of a stranger." 33 Wash. at 510. *Long* explains that at common law a right to a way of necessity arose when necessary access was over the land of the purchaser's grantor, but "when the purchaser found himself . . . cut off by lands not the property of his grantor, his remedy was by means of a public road only . . . since private lands could not be taken for merely private purposes." 7 Wash. at 269.

premises in order to provide reasonable access thereto the owners thereof." Ex. 1, at 2.

In the trial below, Mr. Davis essentially admitted that an access easement to the

Johnsons' property was "necessary" within the common meaning of that word: it was

absolutely needed and required in order for them to reach their property. His argument

was only that it should follow a different route, preferably over land other than his. As he

told the court in opening statement, "[T]hey have alternate routes that are legally

enforceable by the Declaration of Easements and Covenants and the RCWs of this State

and binding case law." Report of Proceedings (RP) at 21-22. As he argued to the court

in closing, "You know, it's expensive to develop property when you buy property and

you then develop it. You know, it's the burden of the person to pay for those expenses,

not his neighbor." RP at 174-75.

The trial court properly considered the intent of Barnett/Turlis when, in 1978, it

created floating easements for future owners. The expressed purposes of the 1978

Declaration included "establish[ing] certain covenants and easements to promote the

orderly use and enjoyment of all the premises, [and] to protect and increase the property

value thereof." Ex. 1, at 1. As it pertained to providing access, the 1978 Declaration's

stated purpose was "to insure that upon division and development of said premises[,]

reasonable access will be assured to parcels into which said premises are divided."

*Id.* at 2. The 1978 Declaration states, "There is presently no reasonable means of

11

determining where new roads must be located to provide reasonable access," thereby

recognizing that the locations must be fixed in the future, potentially by a court. *Id.*

Construing the 1978 Declaration as a whole, the language "as necessary" required

the Johnsons to prove only that no legal, presently-usable access existed to their property.

Once Mr. Davis withdrew permission to cross his land, that was the case. The easement

sought by the Johnsons was "necessary" within the meaning of the 1978 Declaration.

II.     FOR THE TRIAL COURT TO FIX THE JOHNSONS' ACCESS WHERE IT DID WAS
        CONSISTENT WITH THE 1978 DECLARATION AND APPLICABLE LAW

It is a verity on appeal that the access actually (albeit infrequently) used by Mr.

Johnson from the time he acquired his property in 2006 until 2015 was the route along

Bonaparte Creek that the trial court fixed as the Johnsons' easement. Mr. Davis

complained at trial that Mr. Johnson's use during those years was "permissive." *E.g.*,

RP at 14-15, 19, 180. Evidently it was. But that does not help Mr. Davis.

The trial court was not being asked to find a *prescriptive* easement, which could

not be based on permissive use. *See, e.g.*, *Boyd v. Sunflower Props., LLC*, 197 Wn. App.

137, 143, 389 P.3d 626 (2016) ("The requirements to establish a prescriptive easement

are the same as those to establish adverse possession" and include "open and notorious

use of the servient land . . . adverse to the owner of the land sought to be subjected.").

The court was being asked to fix the location of an *express*, *floating* easement. Mr.

Johnson's prior use of the route across Mr. Davis's land supported the trial court's

12

No. 37784-9-III
*Johnson v. Davis*

decision to fix the easement where it did.  Mr. Davis fails to demonstrate any error in

fixing the easement at that location.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Fearing, J.

13